Thomas F. DONOFRIO, Appellant,

v.

William B. CAMP.

No. 71–1075.

United States Court of Appeals, District of Columbia Circuit.

Argued April 13, 1972.

Decided Oct. 18, 1972.

---

Mr. Barney J. Keren, Washington, D. C., for appellant.

Mr. Walter H. Fleischer, Atty., Dept. of Justice, with whom Mr. L. Patrick Gray, III, Deputy Atty. Gen., at the time the brief was filed, and Mr. Thomas A. Flannery, U. S. Atty., at the time the brief was filed, were on the brief, for appellee.

Before BAZELON, Chief Judge, and McGOWAN, Circuit Judge, and FRANK A. KAUFMAN,[*] United States District Judge for the District of Maryland.

PER CURIAM:

The trial judge refused to grant appellant's request for a continuance before ruling on appellee's motion for dismissal or summary judgment. He then dismissed appellant Donofrio's defamation suit against the Comptroller of the Currency, William Camp. In his complaint, Donofrio alleged that Camp, on various occasions between 1966 and 1968, had made statements linking Donofrio with the underworld or *Cosa Nostra*. All but one of appellant's allegations were barred by the relevant statute of limitations.[1] The only alleged communication which it could be inferred from the complaint took place within the necessary one-year period was one between Camp and David Ross, an attorney for the SEC.[2]

In October of 1969, Donofrio filed notices of the taking of depositions, which were then vacated by the District Court.[3]

Camp moved for dismissal of the suit on the grounds that it was barred by the statute of limitations or for summary judgment on the basis of the official immunity doctrine. Donofrio responded that he had not had ample time for discovery and the court below denied the motions so as to " . . . give . . . a reasonable opportunity to go ahead with discovery. . . ." The judge, however, warned Donofrio that " . . . unless you can come up with anything better than this, . . . the next time around, it is going to go right out."[4]

Donofrio again noticed the taking of depositions in February, 1970, but was again stalled, this time by an order staying all proceedings pending a decision of this Court on a motion to compel dismissal of the suit. The motion was denied,[5] and Donofrio filed notices of depositions for the third time on April 29, 1970. He did take nine depositions but was unable to take those of Ross or Camp. He sought unsuccessfully to serve Ross with a subpoena on April 29, and did not attempt to do so again until September 23, after Camp had renewed his motions for dismissal and summary judgment. The second effort to depose Ross was also unsuccessful and no further attempts were made before the dismissal of this suit. Donofrio offered no affidavits in opposition to Camp's renewed motion, but requested another continuance under Fed.R.Civ.P. 56(f). He argued that he should be allowed to take the "critical" deposition of Ross before answering a summary judgment motion. The Court granted Camp's motion on November 13, 1970, and this appeal followed.

---

[*] Sitting by designation pursuant to 28 U.S.C. § 292(c) (1970).

1. 12 D.C.Code 301(4).

2. Donofrio's complaint alleges, in relevant part, that:

¶ 25

\*  \*  \*  \*  \*

The Plaintiff [Donofrio] said Mr. Ross then said that he was told by the Comptroller of the Currency (the Defendant herein) that Plaintiff's name was linked

with Underworld and Cosa Nostra members. Joint App. at 20.

3. Donofrio v. Camp, C.A.No.2521–69 (D. D.C. Nov. 14, 1969).

4. Transcript of hearing on Defendant's Motion to Dismiss or for Summary Judgment, Feb. 17, 1970, Joint App. at 191–93.

5. Camp v. Donofrio, No. 24,024 (D.C.Cir. April 13, 1970).

The District Court was quite unclear as to the grounds for its order, which is printed at the margin.[6] While the order appears to grant the motion for dismissal, that motion would properly be treated as one for summary judgment in view of the affidavits and discovery in the record.[7] Accordingly, we affirm the decision of the court below as a grant of summary judgment.

Upon a motion for summary judgment, supported by affidavits, the opposing party cannot rest merely on his pleadings to establish a genuine issue of fact. There is, however, an inherent danger of injustice in granting summary judgment to the moving party on his own version of facts within his exclusive control as set out only in *ex parte* affidavits. To avoid such unfairness, Fed.R.Civ.P. 56(f) vests the trial judge with discretion to grant the nonmoving party a continuance, permitting him to use his discovery to obtain the information necessary to show an issue of fact in dispute. The judge may also deny summary judgment where the adverse party shows the necessary facts exist but for some good reason he can not produce them on the motion.

There seems little danger of injustice in the denial of a *second* continuance and the grant of summary judgment in this case. Appellant had been given his first continuance with a stern warning as to the consequences of failing to produce more evidence to support his allegations. Since that time, he had had ample opportunity to take the "critical" Ross deposition and offered no explanation of the five month delay between his attempts to do so. Appellant clearly failed to support his request for a continuance by providing any good reasons for his complete inability to produce the evidence necessary to defeat the motion for summary judgment.

The trial judge also had substantial indications that he was being asked to prolong a vexatious suit. Appellant had repeatedly abused the discovery process by taking depositions of no substance.[8] The affidavits before the judge, including that of appellant himself, strongly suggested that the suit was groundless. Both Camp and Ross had, in their affidavits, denied communicating with each other. Donofrio, in his own deposition, was asked whether Ross had actually told him of Camp's linking him with the Mafia. Donofrio's answer contradicted his own allegations:

> Donofrio: He didn't come right out and say it; no, he didn't say it that way. He did not deny it. I said to him that Mr. —— Mr. Camp has connected me and he didn't say yes or didn't say no.[9]

The rules governing discovery, including Fed.R.Civ.P. 56(f), are to be construed liberally to prevent injustice, but they do not require a trial judge to counte-

---

6. The above matter having come before the Court on the motion of the defendant, William B. Camp, Comptroller of the Currency, to dismiss because the action is barred by the statute of limitations [D.C.Code § 12–301(4)], or, in the alternative, for summary judgment, and the Court having considered the papers filed by defendant and plaintiff with respect to this motion, and having heard oral argument of counsel for defendant and plaintiff, and after further careful consideration and reflection since after hearing, it is by the Court this 13th day of November, 1970,

   ORDERED that the defendant's motion to dismiss be, and the same hereby is, granted.

Donofrio v. Camp, C.A.No.2521–69 (D. D.C. November 13, 1970), Joint App. at 371.

7. *See* Fed.R.Civ.P. 12(c) ; Carter v. Stanton, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972).

8. Deputy Comptroller of the Currency Gwin and Abraham Dash of the Comptroller's legal staff were asked no substantive questions when deposed. Other depositions were more lengthy but, generally, did not deal with Donofrio's only surviving allegation of defamation.

9. Joint App. at 503. This statement, clearly contradicts Donofrio's assertions in ¶ 25 of his complaint, at note 2 *supra*, the only allegation in the complaint not barred by the statute of limitations.

nance repeated abuses of the discovery process or to let discovery go on indefinitely in a groundless suit.

■ Finally, appellee's affidavits establish a *prima facie* case that he is entitled to judgment as a matter of law. There is nothing in the record to suggest that even if the purported Ross-Camp exchange had taken place, it was not privileged under the doctrine of official immunity. Donofrio's allegations described a communication in which one federal agency passed on information obtained in performing its regulatory functions to another whose investigations concerned the same subject.[10] Such a communication would clearly have been within the scope of appellee's official duties,[11] hence protected by the absolute privilege of Barr v. Matteo.[12]

Even if, as appellant suggests, his sought after discovery would have produced evidence that the alleged slanderous remarks were made with malice,

> [t]he fact that the action here taken was within the outer perimeter of [appellee's] line of duty is enough to render the privilege applicable despite the allegations of malice in the complaint . . . . Barr v. Matteo, 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959).

■ To have allowed this suit to have continued further in light of the strong suggestion from the record that the suit was groundless might, itself, have directly contravened the rationale of *Barr*. A federal official's immunity is to suit as well as liability; even prolonging discovery in this case " . . .

would consume time and energies which would otherwise be devoted to governmental service and the threat of [such discovery] might appreciably inhibit the fearless, vigorous, and effective administration of policies of government." [13]

In these circumstances, we cannot say that the trial judge erred in failing to grant appellant a further continuance and we affirm the grant of summary judgment.

---

10. In the course of its supervision of national banks, the Comptroller's office became interested in the activities of one S. Mort Zimmerman. In the course of their investigations they turned up possible securities law violations and properly communicated them to the SEC, which had already independently become interested in Zimmerman. The SEC ultimately suspended trading in a Zimmerman controlled corporation. Donofrio was involved in a number of Zimmerman ventures, including banking operations.

11. Camp's affidavit describing his official duties was supported by the affidavit of Secretary of the Treasury Kennedy, who affirmed that even if the alleged acts had taken place, they " . . . were taken in the course of . . . [Camp's] official duties." The office of Comptroller of the Currency is described in 12 U.S.C. § 1 as being "under the general directions of the Secretary of the Treasury."

12. 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed. 2d 1434 (1960).

13. 360 U.S. at 571, 79 S.Ct. at 1339.