**R. Spencer OLIVER, Plaintiff,**

v.

**COMMITTEE FOR the RE–ELECTION OF THE PRESIDENT et al., Defendants.**

**Civ. A. No. 1207–73.**

United States District Court, District of Columbia. April 23, 1975.

---

Joseph H. Koonz, Jr., Washington D. C., for plaintiff.

Maurice R. Dunie, Washington D. C., for non-party witness, Strauss.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### I. INTRODUCTION

This case is before the Court on plaintiff's motion to compel answers to oral interrogatories on deposition, filed on March 10, 1975. On September 25, 1973, Robert S. Strauss, a non-party witness in this case, was called for an oral deposition by plaintiff, R. Spencer Oliver, pursuant to Rule 30 of the Federal Rules of Civil Procedure. During that deposition and the continuation of the deposition on October 1, 1974, Mr. Strauss refused on advice of counsel to answer many questions relating to settlement discussions which had occurred in a related case, *Democratic National Committee v. McCord*, (hereinafter, "*DNC v. McCord*"), Civil Action No. 1233–72 (D.D.C.) Plaintiff now seeks by this motion to compel disclosure about those settlement discussions.

*DNC v. McCord* [1] and the instant suit arise from the alleged break-in and "bugging" of the Democratic National Committee in the now-famous Watergate

---

1. For further background information, see this Court's opinion in DNC v. McCord, 356 F. Supp. 1394 (D.D.C.1973).

office building. *DNC v. McCord* was settled by the parties for $775,000 on August 9, 1974. This settlement grew out of the negotiations of which plaintiff herein seeks discovery. In the instant suit, plaintiff Oliver seeks compensatory and punitive damages under provision of 18 U.S.C. § 2520 for the allegedly illegal wiretap itself, and compensatory and punitive damages for the invasion of his privacy under the common law of the District of Columbia. Plaintiff asks specifically under both theories for compensation for his loss of earnings and earnings opportunities which resulted from the defendants' alleged acts.

## II. THE COURT WILL COMPEL A WITNESS TO ANSWER ORAL INTERROGATORIES IF THE INFORMATION SOUGHT IS RELEVANT OR REASONABLY CALCULATED TO LEAD TO ADMISSIBLE EVIDENCE, AND IF SUCH DISCOVERY DOES NOT ABUSE THE DISCOVERY PROCESS.

Rule 37(a)(2) provides that the court may compel answers to discovery requests under Rules 30, 31, 33, 34. The rule states that "(i)f a deponent fails to answer a question propounded or submitted under Rule 30 . . . the discovering party may move for an order compelling an answer . . . ." The non-party witness, Strauss, objects to the questions relating to settlement negotiations in a related suit on the grounds (1) that the information sought is privileged information, (2) that the information sought is not relevant, (3) that the information sought is not reasonably calculated to lead to admissible evidence, and (4) that the questions are an abuse of the discovery process in that they seek an end unrelated to the instant case.

Rule 26(b)(1) defines the scope of discovery for a party who seeks discovery by one of the methods enumerated in Rule 26(a):

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

■ Counsel for the non-party witness, Strauss, urges upon the Court another criterion, which is not expressed in the rule, for determining whether material is discoverable: the discovery process must not be abused. Counsel cites *Donofrio v. Camp*, 152 U.S.App.D. C. 280, 470 F.2d 428 (1972) for the proposition that "the rules governing discovery . . . are to be construed liberally to prevent injustice, but they do not require a trial judge to countenance repeated abuses of the discovery process . . . ." 470 F.2d at 431–32.

This Court agrees that this principle is implicit in the Rule. As succinctly stated by Wright & Miller, Federal Practice and Procedure: Civil § 2286 (hereinafter, "Wright & Miller"), "[a] motion to compel a witness to answer questions put to him at a deposition should be granted if the questions are relevant and *proper* and denied if the questions call for privileged information or if an answer is *otherwise unnecessary.*" (Footnotes omitted; emphasis added.)

## III. A WITNESS' TESTIMONY CONCERNING SETTLEMENT NEGOTIATIONS IN ANOTHER SUIT IS NOT PRIVILEGED.

▋ Contrary to assertions by Mr. Strauss' counsel, Strauss' negotiations which led to a settlement of *DNC v. McCord* are not privileged communications. The usual view has been that the same rules of privilege apply to discovery as apply at trial. Wright & Miller § 2016; *see also,* Federal Rules of Evidence, Rule 1101(c) (effective July 1, 1975). In a federal question suit, the federal court recognizes those privileges which were recognized at common law. While offers of settlement (and presumably also negotiations which led to such offers) are clearly not admissible at trial for a number of public policy reasons, such negotiations do not fall within the confines of the privileges recognized at common law. *See* 8 Wigmore, Evidence, §§ 2210–2396 (McNaughton rev. 1961). For example, any notion that these communications fall within the attorney-client privilege is dispelled by a mere statement of that privilege.[2] Obviously, Mr. Strauss' negotiations with adverse parties are not communications with his own legal adviser.

## IV. THE TESTIMONY SOUGHT HEREIN IS NEITHER RELEVANT NOR REASONABLY CALCULATED TO LEAD TO ADMISSIBLE EVIDENCE.

▋ Plaintiff contends that Mr. Strauss' testimony about the settlement negotiations is relevant to plaintiff's suit or is reasonably calculated to lead to admissible evidence supporting his claims. Plaintiff's suit is based principally on allegations that an illegal wiretap was placed on his telephone, that his right to privacy was violated repeatedly, and that as a result of these acts he is entitled to compensation, including any lost earnings or earnings opportunities, and punitive damages for defendants' alleged willful or wanton misconduct. Plaintiff argues that the Strauss testimony relates to the allegations of the complaint in that the testimony would show that he lost his earnings from the DNC *as a result of* his involvement as the victim of a wiretap in the "Watergate" affair. There is the suggestion that Mr. Oliver's discharge from his employment may have been a condition of the compromise agreement. It is plaintiff's further belief that Mr. Strauss discussed both plaintiff and his claims with defendants in this suit during the settlement negotiations.

Plaintiff Oliver's attempt to relate Mr. Strauss' settlement negotiations with the claims of his suit, presumably by showing causation, is undercut by two factors. First, Mr. Strauss declared during the first day of his deposition, nearly one and one-half years ago, that, "My decision to ask for Mr. Oliver's removal from his office, first that he resign, second that he be removed, third to take him off the payroll, related absolutely in no way to anything growing out of the Watergate incident . . . ." (Deposition p. 64). Elsewhere in the deposition, Mr. Strauss elaborated about his decision to seek Mr. Oliver's removal: a decision apparently made for political reasons prior to December 9, 1972, when Mr. Strauss took office as the Chairman of the DNC, and well before the settlement negotiations began apparently in April 1973. (Deposition p. 28–38).

Second, the relevance of the settlement negotiations to Mr. Oliver's claims is undercut by his own remarks in a press conference on April 19, 1973. In

---

2. "Where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection be waived." 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961).

response to a question about whether he had offered to resign from his position as Executive Director of the Association of State Democratic Chairmen, he said, "Yes, I did and it became apparent in January [1973] that Mr. Strauss was insisting upon my removal . . . ." Thus, even Mr. Oliver knew of Mr. Strauss' intentions well before settlement negotiations began in *DNC v. McCord.* In view of these two factors, particularly the Strauss statement, further discovery about the settlement negotiations, in order to show causation, is unnecessary.

Finally, that Mr. Strauss, a non-party witness, may have discussed Mr. Oliver or his claim during settlement negotiations in a prior suit does not relate to the proof of liability or damages on the part of defendants in the instant case.

Beyond this assertion that the settlement negotiations relate to Mr. Oliver's claim of lost earnings, which the Court finds to be insufficient, plaintiff's counsel has not asserted any other hint of relevancy. There has been no proffer of what Mr. Strauss could conceivably say which would relate to plaintiff's claims or lead to admissible evidence. The Court has carefully studied the entire deposition in order to determine any possible connection between the settlement discussions and plaintiff's claims. The Court has concluded that it cannot make the leap of imagination which plaintiff urges upon it.

 Finally, plaintiff argues that the public has a right· to know the details surrounding the settlement of *DNC v. McCord* and that this Court should aid the process of "getting the truth out." It is true that relevant information conveyed in communications which are confidential but which do not fall within the confines of *privileged* communications is discoverable, since the interest which men have in keeping their affairs private is outweighed by society's interest in the search for truth through the judicial process. Society has a right to

everyman's testimony. But the societal interest ends where the information sought does not relate to the matter before the Court. At that point pursuit of testimony may become unreasonably annoying, embarrassing, or oppressive. And at that point, courts will not countenance a party's use of the judicial process in pursuit of ends unrelated to claims cognizable within the judicial process.

In view of these conclusions, the Court denies plaintiff's motion to compel answers to oral interrogatories on deposition.