Thomas R. KRAFT, Appellant,

v.

The WILLIAM ALANSON WHITE PSYCHIATRIC FOUNDATION, et al., Appellees.

No. 84–408.

District of Columbia Court of Appeals.
Argued June 12, 1985.
Decided Sept. 27, 1985.

---

Daniel E. Schultz, Washington, D.C., with whom Melinda Gray Murray, Washington, D.C., was on brief, for appellant.

Paul R. Friedman, Washington, D.C., with whom Bruce J. Ennis, Mark B. Sandground, Frank Martell, Washington, D.C., Martin J. Snider and Steven R. Migdal, Annapolis, Md., were on brief, for appellees.

Before PRYOR, Chief Judge, NEBEKER, Associate Judge, and REILLY, Chief Judge, Retired.

NEBEKER, Associate Judge:

This is an appeal from an order granting summary judgment for appellees, defendants in an action for breach of contract and defamation. We find no merit in appellant's arguments and affirm.

## I

Dr. Thomas R. Kraft, appellant here, is a licensed Ph.D. psychologist who enrolled in a post-graduate continuing education program at the William Alanson White Psychiatric Foundation, doing business as the Washington School of Psychiatry (WSP).[1]

---

1. As listed in the record, faculty members of WSP have credentials from such institutions as Harvard Medical School and the Washington Psychoanalytic Institute. In addition to their

The basis for Dr. Kraft's suits against WSP and several faculty members was the school's decision not to award him a certificate of successful completion of its two-year training program in child and adolescent psychotherapy.

The training program had three components. The students were required (1) to attend weekly group meetings featuring a lecture by a faculty member on theoretical concepts, followed by discussion of clinical application of those concepts; (2) to read assigned literature in preparation for the weekly meetings; and (3) to present to faculty supervisors case material involving their clinical work with their own patients. After considering reports from Dr. Kraft's clinical supervisors, the coordinating committee for the training program—all members concurring—determined that his clinical work was not satisfactory and that WSP should, therefore, decline to award him a certificate of "successful completion" of the program.[2] That decision was subsequently ratified by the faculty of the training program.

Dr. Kraft filed suit, claiming that his participation and attendance gave him a contractual right to a certificate of successful completion. He also claimed that certain faculty members had made libelous and slanderous statements about him, specifically in written materials reflecting their opinions of his work, where they described what they perceived as his weakness in the clinical component of the training program. The materials were contained in Dr. Kraft's student file, made available to him before he filed his claim.

While discovery was in progress, appellees moved for summary judgment on Dr. Kraft's contractual and defamation claims. After a hearing, the trial judge granted the motion for summary judgment, based on the record before him. Dr. Kraft argues (1) that appellees breached their contract with him in denying him a certificate; (2) that appellees had defamed him in statements made part of his WSP record; and (3) that in any event it was error for the trial court to grant summary judgment when Dr. Kraft had not completed his discovery of appellees. We perceive no error in the trial court's determinations.

**II**

■ First, as to Dr. Kraft's contractual claim, judgment was proper if, on the record before the trial judge, there was no genuine issue of material fact and appellees were entitled to judgment as a matter of law. Super.Ct.Civ.R. 56(c); *Scott v. District of Columbia,* 493 A.2d 319, 321 (D.C. 1985). With their motion for summary judgment, appellees filed a statement of material facts as to which there is no genuine issue, as required in Super.Ct.Civ.R. 12-I(k). Dr. Kraft did not include in his opposition a statement of material facts as to which he contended there was a genuine issue to be litigated. Super.Ct.Civ.R. 12-I(k); *see Scott v. District of Columbia, supra,* 493 A.2d at 321; *Kron v. Young & Simon, Inc.,* 265 A.2d 293, 295 (D.C.1970).[3] The trial judge could, therefore, accept as undisputed the facts relevant to the contractual claim.

work for WSP, they currently hold, or have held, faculty positions teaching psychiatry, pediatrics, and child psychiatry at facilities such as the Georgetown University Medical Center, Georgetown and George Washington University Medical Schools, the U.C.L.A. Medical School, and Children's Hospital.

2. Dr. Kraft had entered the two-year training program in September 1980. The program was divided into four "quarters." During his third quarter, on December 21, 1981, Dr. Edward Sheridan, representing the faculty, wrote Dr. Kraft to inform him that he would not receive a certificate of satisfactory completion, but could, if he chose, continue the training program.

3. Dr. Kraft argued in the memorandum of points and authorities filed with his opposition that disposition of appellees' motion for summary judgment should be deferred until he could conduct further discovery. The trial judge found a deferrment unwarranted in light of the record before him. We agree. *Donofrio v. Camp,* 152 U.S.App.D.C. 280, 283-84, 470 F.2d 428, 431-32 (1972) (trial judge not required to prolong discovery in groundless suit).

Dr. Kraft contended that under his contract with WSP, formed when he was accepted into the training program, he would automatically receive a certificate of successful completion of the program if he simply attended all of the scheduled courses and completed the required number of hours of clinical case supervision during the two-year program.

WSP's 1980–81 catalogue, in effect at the time Dr. Kraft enrolled in the training program, was in the record before the trial judge when he rendered summary judgment. Appellees' Rule 12–I(k) statement included the catalogue's provisions that: (1) "[a] certificate is awarded upon successful completion of the program"; (2) that "student progress and personal conduct in each program is monitored by the ... selection committee, which advises students of their status. This may include dismissal from a program where performance is judged to be inadequate or unethical." In addition, appellees' Rule 12–I(k) statement offered the facts—undisputed by Dr. Kraft—that he had been enrolled in another of WSP's educational programs in 1972–73, that he had been dropped from that program, and that he did not receive a certificate of successful completion of that program.

██ The relationship between an educational institution and its students is contractual in nature. The terms set down in the educational institution's bulletin become a part of the contract. *Basch v. George Washington University*, 370 A.2d 1364, 1366 (D.C.1977). The terms in the catalogue are to be given their common meaning and interpreted from the point of view of a reasonable person in the position of the parties. *Id.* at 1367. The principle is well established as it applies to degree-granting institutions. We see no reason to distinguish post-graduate continuing education institutions that choose to have the

certificate they award represent satisfactory accomplishment of professional goals.[4]

██ Dr. Kraft had notice of the catalogue's provisions regarding evaluation. Moreover, he had actual knowledge, from his earlier experience as a WSP student, that WSP would deny a certificate to a student whose performance was unsatisfactory. His previous experience put him on notice that, unless WSP's policy had changed, he was subject to evaluation and to possible dismissal and denial of the certificate for inadequate performance in the program. His assertion that he nevertheless subjectively believed that a satisfactory evaluation was unessential to his earning his certificate has no legal significance because a reasonable person in his position would have concluded otherwise. *Id.* at 1367.

██ We agree with the trial court that the operative contract documents conditioned the award of a certificate upon successful completion of all three components of the training program, not merely upon regular class attendance and completion of the assigned readings. We also conclude that the trial judge did not err in concluding that WSP did not breach its contract with Dr. Kraft when it refused to award him a certificate. The record reveals that WSP provided him with the academic instruction and clinical supervision described in the 1980–81 catalogue. There was no breach of contract with respect to WSP's decision not to award Dr. Kraft a certificate of successful completion because he failed to satisfy the condition precedent that he satisfactorily complete his supervised clinical work.

██ Whether his clinical supervisors were accurate in their evaluations of his clinical work is not a question for the court.

---

4. WSP's 1980–81 catalogue states that the institution "has been authorized by the American Medical Association to give Category 1 credit under the Continuing Medical Education Program. It has been accredited as a continuing education sponsor for Maryland psychologists and has applied for accreditation for social workers." WSP's accreditation by outside groups implies that the certificate of the training program represented some level of accomplishment beyond mere attendance at classes and exposure to relevant literature.

An academic judgment of school officials that a student does not have the necessary clinical ability to perform adequately and was making insufficient progress toward that goal is a determination calling for judicial deference. *Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78, 89–90, 98 S.Ct. 948, 954–955, 435 U.S. 78 (1978). In *Board of Curators*, the Court reasoned that

> [S]uch a judgment is by its nature more subjective and evaluative than the typical factual questions presented in the average disciplinary decision. Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking.

*Id.* at 90, 98 S.Ct. at 955. Accordingly, like the trial court, we decline to intrude in academic decisionmaking.

### III

Dr. Kraft alleged that faculty members made defamatory statements pursuant to their unfavorable evaluation of his supervised clinical work. The statements were contained in documents in his WSP student file. Although he alleged inappropriate publication, he did not specifically allege any publication of the statements to anyone other than faculty members at WSP. The trial court granted summary judgment for appellees on the defamation claim on three alternative grounds: (1) the statements alleged to be defamatory are non-actionable statements of opinion protected by the First Amendment; (2) that by enrolling as a student in the training program, Dr. Kraft gave implied consent to the intra-school publication of such statements; and (3) Dr. Kraft's defamation claim is barred by the common-interest privilege, here the common interest of faculty members in the

academic process of evaluation of a student.

Dr. Kraft contends that the trial judge erred, first, because, as a matter of law appellees were not entitled to summary judgment on this claim and, second, because Dr. Kraft had not completed discovery. We disagree and affirm the trial court's judgment based on Dr. Kraft's implied consent.[5] Evidence already in the record at the time the trial judge granted summary judgment provided adequate support for judgment on that ground. It was thus unnecessary to defer judgment pending further discovery. *See Donofrio v. Camp, supra* note 3, 152 U.S.App.D.C. at 283–84, 470 F.2d at 431–32.

■ We hold that the statements Dr. Kraft alleges to be defamatory are non-actionable because, by enrolling as a student in the training program, he impliedly consented to intra-school publication of such statements. A person who seeks an academic credential and who is on notice that satisfactory performance is a prerequisite to his receipt of that credential consents to frank evaluation by those charged with the responsibility to supervise him.

The issue of whether teachers defame their students when they make unfavorable comments in the academic context is one of first impression for this court. We find, however, that the circumstances are closely analogous to those in an employment situation where an employee impliedly consents to limited publication of a critical evaluation of his work performance. In *Joftes v. Kaufman*, 324 F.Supp. 660 (D.D.C.1971) (Gesell, J.) a discharged employee brought a libel action against former superiors who sent him a notice of dismissal stating that he was being terminated for "misconduct," "malfeasance," and "incompetence." The plaintiff in *Joftes* was a member of a union whose collective bargaining agreement provided for written notice of dismissal for cause. Each of the allegedly libelous statements was among the reasons specified in

---

5. Because we find implied consent was an adequate ground for the grant of summary judg-

ment, we do not reach the two alternative grounds set forth by the trial court.

the collective bargaining agreement as constituting cause for dismissal. Judge Gesell, in a most lucid opinion, granted summary judgment for defendants, holding that "notices of dismissal for cause which are contemplated by a collective bargaining agreement and which are published by the employer only to those with a legitimate interest in the subject matter may not be made the subject of an action in libel, regardless of whether the allegations of cause are true or false and regardless of the actual motive behind the dismissal." *Id.* at 662. Accordingly, the court held that the letters in question were not actionable because "[b]y virtue of his membership in the [union], Joftes had consented to a written statement of cause in the event of his dismissal." *Id.* at 663.

 We are persuaded that the *Joftes* decision should be followed by this court. A person who consents to the publication of comments about himself has no cause of action. *See also* RESTATEMENT (SECOND) OF TORTS § 583 (1977). Our application of the rule to Dr. Kraft's defamation claim has three parts: appellees were protected by absolute privilege provided (1) there was implied consent; (2) the statements of which Dr. Kraft complains were relevant to the purpose that was the object of his consent; and (3) broadcast was limited to those with a legitimate interest in the subject matter.

On the question of consent, Dr. Kraft relies on his assertion by affidavit that he never expressly authorized WSP's faculty members to discuss their evaluations of him. The trial judge had before him, however, the literature given Dr. Kraft by WSP and the facts relating to Dr. Kraft's previous experience at WSP. They establish that Dr. Kraft was on notice that his supervisors would evaluate his work and would of necessity communicate their evaluations to the chairman of the training program, to the Training Program Coordinating Committee, and to other training program faculty members. Dr. Kraft's enrollment in the program, like Mr. Joftes' membership in his union, implies consent to communications essential to the relationship involved.

Next, the record reveals that the communications—unnecessary to republish here— are faculty evaluations of Dr. Kraft's performance in the clinical component of the training program. Satisfactory clinical performance was a prerequisite to award of the certificate. Each statement went directly to Dr. Kraft's handling of his clinical patients and none went further than to state possible reasons for the supervisor's dissatisfaction with his performance. *See Joftes, supra,* 324 F.Supp. at 663.

Finally, broadcast of the communications was confined to the faculty of WSP, whose members shared a collegial responsibility for decisions regarding award of the training program certificate. Dr. Kraft offered no specific instance of broadcast outside that circle, nor did he contradict appellees' assertion in their Rule 12–I(k) statement of material facts as to which there is no genuine issue that broadcast had been thus limited. We conclude that appellees met the three conditions for absolute privilege based on implied consent. *Cf. Sturdivant v. Seaboard Service System, Ltd.,* 459 A.2d 1058, 1060 (D.C.1983) (citing *Joftes, supra,* 324 F.Supp. at 664, for proposition that properly limited publication preserves absolute privilege protecting statements made in arbitration proceeding). Undisputed evidence supports the trial judge's determination that appellees were entitled to judgment as a matter of law. Super.Ct. Civ.R. 56(c).

*Affirmed.*