Louis DeMOSS, t/a Park Counseling Service, Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

Louis DeMOSS, t/a Park Counseling Service, Plaintiff,

v.

VOLKSWAGEN OF AMERICA, INC., Defendant.

Civ. A. Nos. 82–2070, 83–1210.

United States District Court, W.D. Pennsylvania.

June 18, 1984.

Bernard S. Shire, Monessen, Pa., for plaintiff.

John H. Scott, Jr., Pittsburgh, Pa., for Metropolitan Life.

James P. Hollihan, Pittsburgh, Pa., for Volkswagen.

## MEMORANDUM

ZIEGLER, District Judge.

In separate complaints, plaintiff has filed suit against Metropolitan Life Insurance Company for libel and tortious interference with prospective contractual relations, and Volkswagen of America for tortious interference with prospective contractual relations. Jurisdiction is based on diversity of citizenship.

The claims arise from letters sent by Metropolitan to employees of Volkswagen. The letters advised the employees that their employee benefit plan did not cover psychological services rendered by plaintiff and others. The complaints allege that the letters were defamatory and caused many clients to terminate psychological counseling with plaintiff. Defendants argue that Pennsylvania law places upon them a duty to inform the employees as to why certain medical services are not covered by the benefit plan. We agree with defendants that insurers are immune from liability under Pennsylvania law when exercising their statutory duty to inform clients of changes in insurance coverage. We therefore will grant defendants' motion for summary judgment.

### I.

Plaintiff is a psychologist, licensed by the Commonwealth of Pennsylvania. He practices under the name of Park Counseling Service in Greensburg, Pennsylvania. For several years before 1982, plaintiff treated a number of Volkswagen employees in the regular course of his business. Metropolitan routinely processed and paid Volkswagen employee claims for health services rendered by psychologists, including plaintiff. In late 1981, a Volkswagen corporate benefits administrator discovered that its insurance carrier, Metropolitan, was paying for psychological counseling and treatment. She contacted Blue Cross/Blue Shield of Michigan, which developed the administrative manual describing the scope and level of Volkswagen health insurance benefits. Blue Cross then informed her that the Volkswagen plan did not cover services rendered by a psychologist unless they were rendered under the direction of a psychiatrist or by a psychologist employed by an approved facility. Blue Cross did not determine Park Counseling to be an approved facility for the purposes of the plan.

According to Volkswagen, Metropolitan was notified in January, 1982 that the insurance company should only pay claims for psychological services rendered under the direction of a psychiatrist or rendered through an approved facility. Volkswagen states that neither Louis DeMoss nor Park Counseling was ever singled out by Volkswagen in its discussions with Metropolitan.

In February 1982, Metropolitan sent letters to the Volkswagen employees who were clients of Park Counseling. The let-

ters stated that the most recent psychological counseling bill would be paid by Metropolitan, but that the carrier would not pay future bills for such counseling. A typical letter, which is attached as Exhibit "A" to plaintiff's complaint, is as follows:

Dear [Employee]:

This will acknowledge receipt of your statement of claim indicating services rendered by Park Counseling Service on January 9, 1982 for which a charge of $60.00 was incurred.

According to your group plan with Volkswagen, psychologists are not recognized as payable providers and Park Counseling does not appear to be an approved facility. Please be advised we have paid $60.00 in benefits for this charge but in the future charges from pychologists (sic) or Park Counseling Services will not be considered.

We trust this will satisfactorily explain our actions in this matter. If we can be of any further assistance please feel free to contact us at 814–266–0511.

> Yours truly,
> Dave DiBasilio
> Supervisor
> Johnstown Group Health Claims

Plaintiff claims that the letters were defamatory because they harmed his reputation and lowered his esteem in the community. He also claims that, after Metropolitan decided no longer to reimburse his clients for psychological services, the clients terminated their visits out of concern that plaintiff was not qualified to offer psychological treatment.

## II.

■ We begin by noting that plaintiff's common law claims of defamation and tortious interference with prospective contractual relations arise under state law. Therefore, we must look to state law to determine the rights, liabilities and immunities of the parties. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Appalachian Insurance Co. v. Liberty Mutual Insurance Co.*, 676 F.2d 56 (3d Cir.1982). We find that defendants' conduct in the present case is governed by the Unfair Insurance Practices Act of

Pennsylvania. Pub.L. 589, No. 205 (1974); 40 P.S. § 1171.1 *et seq.*

The Unfair Insurance Practices Act is the response of the General Assembly to an insurance industry practice of arbitrarily terminating homeowner's policies in high-risk, inner-city neighborhoods. The legislation's chief sponsor, Senator Freeman Hankins of Philadelphia, told the state senate that the Act is intended to prevent cancellation of insurance policies of inner-city residents at the whim of insurers after receipt of premiums for many years. As he told the senate on first consideration of the bill: "We have let a very serious problem drift for much too long. The insurance industry must be put on notice that it can no longer pick and choose its clients, dropping them as they wish and, in reality, breaking up a financial agreement of longstanding." Pa. Senate Journal No. 42, p. 662, June 20, 1973.

The Act contains a lengthy list of methods of competition and deceptive acts and practices proscribed by the Legislature. Among those practices deemed illegal are: "Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made," 40 P.S. § 1171.5(a)(10)(x); and "Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." 40 P.S. § 1171.5(a)(10)(xiv). These are precisely the provisions followed by Metropolitan in informing the employees of Volkswagen that their psychological services bills no longer would be covered in the employee benefit plan. We find that the letters provided a prompt, reasonable explanation of the basis upon which Metropolitan denied coverage and that the letters reasonably set forth the necessary information to satisfy the company's obligations under the Unfair Insurance Practices Act.

Nonetheless, plaintiff maintains that the letters are defamatory under Pennsylvania law and that the letters tortiously interfered with prospective contractual rela-

tions. To address this contention, we again turn to the Unfair Insurance Practices Act, specifically 40 P.S. § 1171.6, which states:

There shall be no liability on the part of and no cause of action of any nature shall arise against the insurance commissioner, any insurer, the authorized representatives, agent and employees of either, or of any firm, person or corporation furnishing to the insurer information as to reasons for cancellation or refusal to renew for any statement made by them in complying with this act or for providing information pertaining thereto.

■ We have found no cases to guide us in determining whether this section grants immunity to Metropolitan for providing policy information to its insureds. However, we are mindful that this Act is remedial in nature and that, under Pennsylvania law, remedial legislation must be read broadly to effectuate its legislative purpose. 1 Pa. C.S. § 1928(c); *see Sheppard v. Old Republic Life Insurance Co.*, 21 Pa.Cmwlth. 360, 346 A.2d 383 (1975) (Insurance laws of Pennsylvania are to be liberally construed to effect their purpose).

The starting point in statutory interpretation is the language of the statute. Section 6 of the Unfair Insurance Practices Act presents a difficult task of interpretation because it defines the liability of eight disparate persons and entities in four different situations in a 71-word sentence. We must determine the liability of one entity (an insurance carrier) in one situation (making statements to insureds regarding changes in coverage).

Plaintiff contends that the plain language of the statute deals only with those entities furnishing information to the "insurer." To reach this interpretation, plaintiff must read the statute as follows: "There shall be no liability on the part of and no cause of action of any nature shall arise against ... any *insurer* ... furnishing to the *insurer* any information...." This is clearly an absurd interpretation of the statute, and the Legislature cannot be presumed to intend such a result from its enactments. *Lehigh Valley Co-op. Farmers v. Commonwealth*, 498 Pa. 521, 447

A.2d 948 (1982). We believe a more reasonable interpretation of the language is that the phrase, "furnishing to the insurer any information," modifies only "any firm, person or corporation" and does not modify "the commissioner, any insurer, the authorized representatives, agents and employees of either." As a result, our reading of the statute, for the purposes of the present case, is as follows: "There shall be no liability on the part of and no cause of action of any nature shall arise against ... any insurer ... for any statement" made in compliance with the Act.

We note that such a reading comports with the legislative history, which indicates that the Legislature intended the Act to prohibit deceptive insurance trade practices, 40 P.S. § 1171.2, by granting immunity from civil suit to those insurers who comply with the Act, 40 P.S. § 1171.6, and by providing sanctions and penalties for those insurers who do not. 40 P.S. §§ 1171.9, 1171.10, 1171.11. Further evidence of this *quid pro quo*—immunity for insurance companies that comply with the Act—can be gleaned from the comments of Senator Hankins to the senate shortly before the bill's passage: "This bill is designed not only to stop wholesale cancellations and do away with arbitrary cancellations ..., but it also provides a reasonable basis for the insurance industry to conduct is business." Pa. Senate Journal No. 138, p. 2171, July 10, 1974.

■ Given our interpretation of the statutory language and the legislative history, we hold that Metropolitan is immune as a matter of law from tort liability arising from the letters sent to Volkswagen employees. By sending the letters to inform the employees of changes in their employee benefit coverage, Metropolitan was performing its duties under the Pennsylvania Unfair Insurance Practices Act. Section 6 of the Act states that no cause of action shall arise against an insurer for any statement made in compliance with the Act. Because the present action arises under state law, we are bound by the immunity granted by this statute. Summary judg-

ment will be granted for Metropolitan Life Insurance Company.

### III.

Volkswagen of America also has moved for summary judgment. Plaintiff alleges that Volkswagen is liable for tortious interference with prospective contractual relations. The claim against Volkswagen is premised solely on Metropolitan's allegedly libelous letters to Volkswagen employees.

Pennsylvania law recognizes "no cause of action" against an insurer who complies with the Act and exempts from liability those acting with the insurer to comply with the Act. 40 P.S. § 1171.6. We hold that an employer who consults with an insurance carrier to deny certain coverage under an employee benefit plan cannot be liable under Pennsylvania law for any statement made by the carrier to employees in compliance with the Unfair Insurance Practices Act. 40 P.S. § 1171.1 *et seq.* Volkswagen's motion for summary judgment will be granted.