William E. HILL, Plaintiff,

v.

CRAY RESEARCH, INC. and James D. Ledbetter, Defendants.

Civ. No. 90–0364–JB.

United States District Court, D. New Mexico.

July 11, 1991.

Peter J. Adang, Jean M. Bannon, Stuart R. Butzier, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, NM, for plaintiff.

Scott K. Goldsmith, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, MN, Duane C. Gilkey, Ogden M. Reid, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, NM, for defendants.

## MEMORANDUM OPINION AND ORDER

BURCIAGA, Chief Judge.

THIS MATTER is before the Court on:

1) Plaintiff's Motion to Strike Paragraph 18 of the Answer pursuant to D.N.M.LR–Cv 7, D.N.M.LR–Cv 8.1 and Fed.R.Civ.P. 12(f);

2) Plaintiff's Motion to Dismiss the affirmative defenses of statute of limitations and absolute privilege or, in the alternative, to grant summary judgment in respect of the said defenses, and for sanctions under Fed.R.Civ.P. 11; and

3) Defendants' Motion for Partial Summary Judgment on the pleadings in respect of Count II of the Complaint pursuant to Fed.R.Civ.P. 12(c).

Having reviewed the pleadings, including the parties' memoranda submitted with these motions, and having considered the relevant law, the Court finds:

 as to 1), that the Plaintiff's motion is not well taken and will be denied;

 as to 2), that the Plaintiff's motion is well taken in part and will be granted in part;

 as to 3), that the Defendants' motion is well taken and will be granted.

## FACTUAL BACKGROUND.

In February 1982, Defendant Cray Research, Inc. (hereinafter "Cray"), a Minnesota corporation manufacturing, selling and servicing super computers, employed Plaintiff William Hill (hereinafter "Hill") until, on August 25, 1989, they gave him written notice of termination. Defendant James D. Ledbetter (hereinafter "Ledbetter") was, at the material times, District Engineering Manager for the Rocky Mountain District of Cray, including Albuquerque, New Mexico, and thereby held supervisory duties over Hill.

The employment relationship was not governed by an explicit contract of employment providing for a definite term, or for termination only for cause or after following any given procedure. Nor was there any consideration, beyond performance of his duties, flowing from Hill to Cray.

However, during initial training, Cray provided Hill with an employee handbook. In September 1986, when he was promoted to Cray's engineer-in-charge at Sandia National Laboratory in Albuquerque, Hill was provided by Cray with an additional document, entitled "Management Guidelines." Hill alleges that the contents of these documents gave rise to an implied contract of employment, providing that he would be terminated only for cause and only after being afforded the benefits of the procedures outlined therein.

Count I of his Complaint alleges that his termination was in breach of that implied contract and in breach of the covenant of good faith and fair dealing.

Count II, considered more fully as Part III of this Opinion at 14, *infra*, alleges that Defendants' actions in terminating Plaintiff constituted prima facie tort.

Count III alleges defamation against Ledbetter and/or other agents of Cray, for communications published both within and outside Cray that imputed to Hill unfitness to perform his duties and gave a false reason or reasons for his termination.

Count IV alleges wrongful discharge in that Hill's termination is said to have been

the direct and proximate result of his candid discussion with a customer, a government defense contractor, about Cray's ability to meet its commitment to the customer, which candor, Hill claims, is authorized and encouraged by public policy.

## I. *PLAINTIFF'S MOTION TO STRIKE FOR NON-COMPLIANCE WITH D.N.M.LR–Cv 8.1*

█ Plaintiff moves to strike Paragraph 18 of the Answer in which Defendants assert: "Plaintiff's Complaint fails to state a claim upon which relief can be granted."

Plaintiff argues that Defendants failed to request in writing that Paragraph 18 be treated as a motion as required by D.N.M.LR–Cv 8.1 and that it should therefore be stricken as an insufficient defense pursuant to Fed.R.Civ.P. 12(f).

While the Court finds that Defendants did not comply with the requirements of Local Rule 8.1, the Court in its sound discretion considers that that single instance of non-compliance does not warrant the drastic sanction of striking the defense set out in Paragraph 18.

### *Discussion.*

█ "[T]he court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). However, such motions are "viewed with disfavor and are rarely granted." *Salazar v. Furr's, Inc.,* 629 F.Supp. 1403, 1411 (D.N.M. 1986). A motion to strike will be denied unless the allegations have no possible relation to the claims. *Quigley v. General Motors Corp.,* 647 F.Supp. 656, 657 (D.Kan. 1986); *see also, United States v. Shell Oil Co.,* 605 F.Supp. 1064, 1085 (D.Colo.1985). If there is any doubt as to whether to strike a matter in a pleading, the motion should be denied. *Gilbreath v. Phillips Petroleum Co.,* 526 F.Supp. 657, 659 (W.D.Okla.1980).

Furthermore, in addressing a motion to strike based upon a violation of a local rule, this Court must construe the local rules in a manner consistent with the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 2071; Fed. R.Civ.P. 83. The correct balance between the Federal Rules and the Local Rules was well expressed in *McKinney v. Dole,* 765 F.2d 1129, 1135 n. 12 (D.C.Cir.1985):

Given the mandate of Fed.R.Civ.P. 83 that District Court rules must be consistent with the Federal Rules ... [t]his interpretation should not be taken as a departure from our prior decisions emphasizing that parties have a firm obligation to comply with the local rule's requirements which are aimed at giving notice ... to the District Court and to the opposing party.... We note simply that in interpreting the requirements and applications of the local rule the principles of the federal rules must ultimately prevail."

Local Rule 8.1 provides, in pertinent part:

If an answer ... raises or contains any of the seven enumerated defenses provided in Rule 12(b) of the Federal Rules of Civil Procedure, the party filing such pleading shall request in writing that such portion of the answer ... be treated as a motion and, thereafter, it shall be considered as a motion filed under D.N.M.LR–Cv 7 of these Rules.[1] Should a party fail to make such written request, such a defense **may** be treated as having been waived, except for jurisdiction defenses. [emphasis added].

█ Although the word "shall" mandates that a written request be made in order to consider a 12(b) defense as a motion to dismiss, the rule does not prescribe *when* such request must be made, nor a specific sanction to be imposed for non-compliance. Rather, as the subjunctive "may" makes plain, the

---

**1.** Plaintiff's Reply in Support of his Motion to Strike (hereinafter "Reply") claims that Defendants are also in breach of D.N.M.LR–Cv 7.4 (raising in an answer a defense under Fed. R.Civ.P. Rule 12(b) to be considered as an opposed motion) and thus also in breach of D.N.M.LR–Cv 7.3 (requiring, *inter alia,* that opposed motions be accompanied by a brief or supporting points with citations or authorities).

*See* Reply, page 1, 3. However, the word "thereafter" in Rule 8.1 means that the mandates of Rules 7.4 and 7.3 do not come into play until after the Rule 8.1 request in writing has been made. In any event, as "thereafter" implies, the Rule 7 obligations flow in direct consequence to the Rule 8.1 request and should not properly be regarded as separate or cumulative breaches but as a single instance of non-compliance.

Court's response is left to its discretion. *See Martinez v. Thrifty Drug & Discount Co.,* 593 F.2d 992, 993 (10th Cir.1979) ("The courts in construing Rule 83 have held that a broad discretion exists in **applying** rules to promote the efficiency in the court [citation omitted].") [emphasis added]. *See also United States v. Warren,* 601 F.2d 471, 473 (9th Cir.1979) (district court's local rule, similar to D.N.M.LR–Cv 7.8, "does afford discretion in its application despite its mandatory language.")[2]

The purpose of Rule 8.1 is to encourage the early determination by motion of the threshold defenses enumerated in Fed. R.Civ.P. 12(b) in order "[t]o secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. The Local Rule seeks merely to shift the emphasis from Rule 12(b)'s provision of an *opportunity* to the pleader for these defenses to be made by pre-trial motion to a *requirement* that that be done.

Although the Court will not condone a cavalier attitude to the commands of the Local Rules, in this particular instance, the effect of requiring a request in writing to treat a 12(b) defense as a motion was substantially and expeditiously achieved by Defendants' July 9, 1990 Motion for Partial Judgment on the Pleadings. That plainly indicated that the 12(b)(6) defense of failure to state a claim was directed to Count II of the Complaint.[3]

Moreover, to treat an isolated instance of non-compliance with the Local Rules as waiving, automatically and in all circumstances, a defense of failure to state a claim, would itself be inconsistent with the Federal Rules.

Fed.R.Civ.P. 12(h)(2) provides in pertinent part:

A defense of failure to state a claim upon which relief can be granted ... may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits.

*See also* the Advisory Committee to the Federal Rules' Note to the 1966 Amendment to Fed.R.Civ.P. 12(h) (the "more substantial" defense of failure to state a claim is preserved from waiver for presentation in a motion at any time up to and including trial on the merits); *Weatherhead v. Globe International, Inc.,* 832 F.2d 1226, 1228 (10th Cir.1987) ("... [a] defense of dismissal is waived only when presented after trial.") *See also* 2A *Moore's Federal Practice* ¶ 12.23 (2d Ed.1990); 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1392 (2d Ed.1990).

■ The Court does not intend the Local Rules to be read as inconsistent with the Federal Rules, and, to the extent that they may be so interpreted, the Local Rules must yield. *See Jaroma v. Massey,* 873 F.2d 17, 20 (1st Cir.1989); *John v. Louisiana (Bd. of Trustees),* 757 F.2d 698, 707 (5th Cir.1985); *Ramsey v. Signal Delivery Service, Inc.,* 631 F.2d 1210 (5th Cir.1980); *Arundar v. DeKalb County School Dist.,* 620 F.2d 493, 495 (5th Cir.1980); *Woodham v. American Cystoscope Co.,* 335 F.2d 551, 556 (5th Cir.1964).

### *Conclusion.*

Accordingly, Plaintiff's motion to strike Paragraph 18 of the Answer will be denied.

## II. *PLAINTIFF'S MOTION TO DISMISS/GRANT SUMMARY JUDGMENT AS TO THE DEFENSES OF STATUTE OF LIMITATIONS AND ABSOLUTE PRIVILEGE*

Plaintiff moves to dismiss or alternatively seeks summary judgment as to Defendants' affirmative defenses that Plaintiff's claims are barred by the relevant statutes of limitation[4] and that Plaintiff's defamation claim is

---

2. The Court notes that, in contrast to the instant case, the district court in *Warren,* in granting a motion to dismiss the indictment, was confronted with a particularly egregious case of non-compliance in that, 11 months after a grand jury had returned the indictment, and having reached the final day for responding, the Government had failed to respond to over 40 motions, including several to *dismiss* the indictment.

3. The Motion itself is considered later in this Memorandum Opinion and Order. *See infra,* at 1077.

4. Although Defendants' Response focusses the application of this defense on Plaintiff's Count III claim of defamation, in light of the general assertion of the defense in the Answer and the lack of greater specificity in the subsequent pleadings,

precluded because the alleged defamatory statement(s) were communicated in circumstances that were absolutely privileged.

Although Plaintiff's motion is framed in the alternative, because of the paucity of evidence before the Court, Plaintiff's motion will be treated as a motion to dismiss.

### Discussion.

 For the purposes of a motion to dismiss, the material allegations set out in the answer must be accepted as true. *Franklin v. Meredith*, 386 F.2d 958, 959 (10th Cir.1967). The Court may not dismiss a defense unless "it appears beyond doubt that the [Defendant] can prove no set of facts in support of his [defense] which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The Court must construe the pleading liberally and may not dismiss the defense if there is any possibility of affording relief. *Gas–A–Car, Inc. v. American Petrofina, Inc.*, 484 F.2d 1102, 1107 (10th Cir.1973).

## I. Statute of Limitations

With respect to Plaintiff's causes of action for breach of implied contract and breach of the covenant of good faith and fair dealing, the relevant limitations period from the accrual of the cause of action for unwritten contracts is four years. § 37–1–4 NMSA 1978 (1990 Repl.). Should it be argued that the contract as contained in the employee handbook and management guidelines is written, the relevant limitations period is six years. § 37–1–3 NMSA 1978 (1990 Repl.).

For prima facie tort and wrongful discharge, the relevant limitations period is, again, four years. § 37–1–4 NMSA 1978 (1990 Repl.). Since Plaintiff was terminated on August 25, 1989 and filed his Complaint on April 16, 1990, Plaintiff's claims are not barred by either statute of limitations.

the Court will treat the defense as it applies to all of Plaintiff's claims.

5. *See* Plaintiff's Memorandum in Support at page 5.

6. As stated in *Liberty Mut. Ins. Co. v. Paper Mfg. Co.*, 753 F.Supp. 156 (E.D.Pa.1990) *Harrison* has

With regard to Plaintiff's claim for defamation, the relevant limitations period is three years. § 37–1–8 NMSA 1978 (1990 Repl.). While the Court notes that, in support of this claim, Plaintiff primarily relies upon the July 25, 1989 memorandum from Ledbetter[5], it matters not at this stage which communication adverted to by Plaintiff forms the basis of the claim, as all relevant communications occurred in or after October 1988. *See* Complaint ¶¶ 20, 22–25 and Answer ¶ 15. Therefore, Plaintiff's defamation claim is similarly not barred by the statute of limitations.

Accordingly, Plaintiff's motion to dismiss Defendants' statute of limitations defense will be granted.

## II. Absolute Privilege

Defendants argue that the alleged defamatory statement(s) were protected by absolute privilege and therefore Plaintiff's claim for defamation is precluded. Specifically, Defendants argue that the defense of absolute privilege extends to communications authorized or required by law and those to which the plaintiff either expressly or impliedly consented.

In New Mexico, the availability of absolute privilege is "generally limited to judicial proceedings, legislative proceedings, executive communications, consent of the plaintiff, husband and wife, and political broadcasts." *Neece v. Kantu*, 84 N.M. 700, 705, 507 P.2d 447 (App.1973), *cert. denied, Ritschel v. Neece*, 84 N.M. 696, 507 P.2d 443 (1973).

Other jurisdictions extend the immunity afforded by absolute privilege to communications authorized or required by law. *See De Moss v. Metropolitan Life Ins. Co.*, 586 F.Supp. 1571 (W.D.Pa.1984), *aff'd*, 760 F.2d 256 (3d Cir.1985); *Harrison v. Nationwide Mut. Fire Ins. Co.*, 580 F.Supp. 133 (E.D.Pa. 1983)[6]; *Haldeman v. Total Petroleum, Inc.*, 376 N.W.2d 98 (Iowa 1985); *Lebbos v. State Bar*, 165 Cal.App.3d 656, 211 Cal.Rptr. 847

been superseded by statute. With effect from July 1, 1990, 42 Pa.C.S.A. § 8371 grants a cause of action in tort for bad faith conduct on the part of an insurer. Communications such as that in *Harrison* are, therefore, no longer absolutely privileged.

(1st Dist.1985). The Court notes that in each of the foregoing cases the authority or duty imposed by law was accompanied by legislation enshrining an "immunity" from liability for compliance with that obligation.

In this case, Defendants do not provide the Court with any law which authorized or required them to make the alleged defamatory statements. Moreover, those New Mexico cases which considered absolute privilege in the context of termination of employment do not apply to this case; rather, they are particular examples of its availability in judicial or quasi-judicial proceedings. *See Neece, supra; Zuniga v. Sears, Roebuck & Co.,* 100 N.M. 414, 671 P.2d 662 (App.1983). *Gaiardo v. Ethyl Corp.,* 697 F.Supp. 1377 (M.D.Pa. 1986) is also unhelpful as Pennsylvania law clearly recognizes an absolute privilege for a discharge notice to an employee.

■ Therefore, the Court will focus only on absolute privilege as it applies to situations where the plaintiff consented to the communication.

"[P]ublication of false and defamatory matter of another is absolutely privileged if the other consents thereto." Restatement (First) of Torts, § 583 (1938); *See also* 50 *Am.Jur.2d,* Libel & Slander, § 185 at 688; *Griffin v. Opinion Pub. Co.,* 114 Mont. 502, 506, 138 P.2d 580, 584 (1943); *Grubb v. Johnson,* 205 Or. 624, 628, 289 P.2d 1067, 1071 (1955).

Under the Restatement (Second) of Torts, the same principle is expressed somewhat differently as a defense. *See* Restatement (Second) of Torts, § 583 (1977) ("... the consent of another to the publication of defamatory matter concerning him is a complete defense to his action for defamation.").

■ The consent of a plaintiff giving rise to an absolute privilege may be express or implied. *See Hollowell v. Career Decisions, Inc.,* 100 Mich.App. 561, 298 N.W.2d 915 (1980) (express consent where plaintiff herself *"requested* the very conversation which she alleges slandered her"); *Turner v. Gateway Transp. Co.,* 569 S.W.2d 358 (Mo. App.1978) (consent implied from voluntary union membership); *Joftes v. Kaufman,* 324 F.Supp. 660 (D.C.Dist.Col.1971) (same);

*Kraft v. William Alanson White Psychiatric Foundation,* 498 A.2d 1145 (Dist.Col.App. 1985) (consent implied from voluntary enrollment in education institution). Consent will be implied where the circumstances show that a plaintiff gave his implied consent to publication, the statement is relevant to the purpose for which that consent was given and publication is limited to those with a legitimate interest in its publication.

Although the Court notes in the authorities a preference for the more flexible concept of *qualified/conditional* privilege and a corresponding reluctance to find an absolute privilege based on consent, its availability in appropriate circumstances is confirmed even by those authorities that have exercised that preference. *See Hollowell, supra; Dominguez v. Babcock,* 696 P.2d 338, 341 (Colo.App. 1984), *aff'd,* 727 P.2d 362 (Colo.1986).

Since a determination of whether Plaintiff in this case expressly or impliedly consented to the communication necessarily involves questions of fact, Plaintiff's motion to dismiss Defendants' defense of absolute privilege will be denied.

### Rule 11 Sanctions.

Plaintiff moves for the imposition of sanctions pursuant to Fed.R.Civ.P. 11 against Defendants for including in their Answer the defenses of statute of limitations and absolute privilege.

■ An attorney's compliance with the affirmative duties imposed by Rule 11 is measured by an objective standard of reasonableness under the circumstances, focussed upon the instant when the attorney's signature is placed on the document. *See Thomas v. Capital Security Services, Inc.,* 836 F.2d 866 (5th Cir.1988 en banc); *Burkhart ex rel. Meeks v. Kinsley Bank,* 804 F.2d 588 (10th Cir.1986); Fed.R.Civ.P. 11, Advisory Committee Notes.

In light of the Court's above ruling with regard to Defendants' absolute privilege defense to Plaintiff's defamation claim, the Court does not find that Defendants acted unreasonably by including that defense in their Answer.

■ And, with regard to Defendants' statute of limitations defense, the Court does not find it unreasonable for Defendants at such an early stage in the proceedings to include such a defense in order to avoid its waiver, particularly where, as here, neither the precise words nor the publication of the defamation were specifically pleaded in the Complaint and its occasion remained imprecise.

Accordingly, the Court finds that Defendants' actions do not rise to the level of unreasonableness warranting sanctions and Plaintiff's motion for sanctions will be denied.

## III. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE PLEADINGS AS TO COUNT II ALLEGING PRIMA FACIE TORT

Defendants move for partial judgment on the pleadings, arguing that Plaintiff's prima facie tort claim is inconsistent with the employment at will doctrine as recognized in New Mexico for the following reasons: (1) an essential element of prima facie tort, namely, an intent to injure, is negated by the employment at will doctrine; and (2) to allow prima facie tort to lie in the circumstances of the present case, would defeat the purpose of prima facie tort to provide relief when the acts complained of do not fall within other recognized causes of action. Accordingly, since Plaintiff can pursue his remedy under the two exceptions to the employment at will doctrine recognized in New Mexico, namely breach of an implied employment contract and retaliatory discharge, Plaintiff's claim for prima facie tort is not, as Plaintiff argues, alternative but, rather, contradictory to those two causes of action, both pleaded in the instant case.

Plaintiff, on the other hand, argues that, in congruity with New Mexico's evolutionary jurisprudence, the above exceptions indicate the preparedness of the New Mexico courts to modify the at-will doctrine and a cause of action in prima facie tort is not an inconsistent departure from the principles of the doctrine.

Thus, the central issue for the Court is whether a cause of action in prima facie tort will lie in the context of termination of an employment terminable at will. The Court finds that it will not.

**The applicable law.**

■ Upon a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), all well-pleaded factual allegations stated in the pleadings of the non-moving party are assumed to be true and all reasonable inferences from these facts are drawn in favor of the non-moving party. *Boyd v. Doskocil Sausage Co.,* 686 F.Supp. 875 (D.Kan.1988). A motion for judgment on the pleadings cannot be granted if any material fact cannot be resolved on the pleadings. Nor will a defendant succeed on a motion under Rule 12(c) if there are allegations in plaintiff's pleadings that, if proved, would permit recovery. *Boyd, supra;* and *See* 5A Wright & Miller, *Federal Practice and Procedure* § 1368 at 525 (2d Ed.1990); 2A *Moore's Federal Practice* ¶ 12.15 at 12–106 (2d Ed.1990).

Since the issue before the Court is a question of law, such issue is unaffected by the factual controversies that remain.

■ In the absence of an explicit contract of employment, New Mexico law has long followed the generally accepted doctrine of employment terminable at will. The law presumes the employment to be terminable at will by either party, at any time, for any reason or even for no reason. *Melnick v. State Farm Mut. Auto. Ins. Co.,* 106 N.M. 726, 730, 749 P.2d 1105 (1988), *cert. denied,* 488 U.S. 822, 109 S.Ct. 67, 102 L.Ed.2d 44 (1988); *Vigil v. Arzola,* 102 N.M. 682, 685, 699 P.2d 613, 616 (App.1983) *rev'd on other grounds,* 101 N.M. 687, 687 P.2d 1038 (1984); *Bottijliso v. Hutchison Fruit Co.,* 96 N.M. 789, 791, 635 P.2d 992, 992 (App.1981); *Gonzales v. United Southwest Nat. Bank,* 93 N.M. 522, 524, 602 P.2d 619 (1979); *Garza v. United Child Care, Inc.,* 88 N.M. 30, 536 P.2d 1086 (App.1975). While it is undoubtedly true that the doctrine and its sometimes harsh results, particularly for the employee, have been the subject of considerable criticism by both courts and legal commentators, *see e.g. Vigil, supra* at 686, 699 P.2d at 617 (citing several law review articles), the New Mexico courts have evinced no intention of abandoning the doctrine.

■ Rather, the New Mexico courts have made only cautious inroads by creating two exceptions to the rule, sounding in both contract and tort, to soften its effect where its strict application would cause injustice. The first exception recognizes a cause of action for breach of an implied contract of employment, deriving from the parties' words and conduct or the employer's personnel policies. *See Forrester v. Parker,* 93 N.M. 781, 606 P.2d 191 (1980); *see also Hernandez v. Home Education Livelihood Program, Inc.,* 98 N.M. 125, 645 P.2d 1381 (App.1982), *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982); and *Kestenbaum v. Pennzoil Co.,* 108 N.M. 20, 766 P.2d 280 (1988), *cert. denied,* 490 U.S. 1109, 109 S.Ct. 3163, 104 L.Ed.2d 1026 (1989). Plaintiff, in reliance on the foregoing line of cases, properly pleads as his first cause of action breach of such an implied contract: *Complaint* ¶¶ 30–36.

■ An additional exception to the employment at will doctrine was established in recognizing a new cause of action sounding in tort for "retaliatory discharge" "when the discharge of an employee contravenes some clear mandate of public policy." *Vigil v. Arzola,* 102 N.M. at 688, 699 P.2d at 619 (App.1983). Again, Plaintiff has properly pleaded, in Count IV, wrongful discharge so as to meet prima facie the criteria set out in *Vigil: Complaint* ¶¶ 53–56.

■ Prima facie tort was recently recognized as a cause of action in New Mexico. *See Schmitz v. Smentowski,* 109 N.M. 386, 785 P.2d 726 (1990) (citing, *inter alia,* Restatement (Second) of Torts § 870 (1977) [7] and *Porter v. Crawford & Co.,* 611 S.W.2d 265 (Mo.App.1980)).

■ The elements of prima facie tort adopted in *Schmitz* were 1) an intentional, *lawful* act by defendant; 2) an *intent to injure* the plaintiff; 3) injury to the plaintiff and 4) the absence of justification or insufficient justification for the defendant's acts. *Id.,* at 394, 785 P.2d at 734 [emphasis added]; *Porter, supra* at 268; Restatement § 870,

comments b and e. In order to avoid dismissal of a claim in prima facie tort, Plaintiff must plead each of these elements.

### Analysis.

■ Plaintiff's prima facie tort fails because under no set of circumstances can Plaintiff satisfy the essential elements of the tort. If Defendants' termination of Plaintiff's employment was in breach of an implied contract or a tortious wrongful discharge, and thereby in either instance *unlawful,* the first element of a lawful act cannot be met. If those claims are unfounded and the termination was thereby lawful, in accordance with the employment at will doctrine, the second element of an intent to injure cannot be met.

As to the first element of intentional lawful conduct, if the Plaintiff is correct in asserting his other causes of action, then the termination was *unlawful* as being either in breach of an implied contract or a wrongful discharge, as discussed above. If that be the case, Plaintiff has failed to allege lawful conduct, a necessary part of the first element of a prima facie tort. *See Beeman v. Safeway Stores, Inc.,* 724 F.Supp. 674 (W.D.Mo.1989) (conduct in contravention of federal statute); *Bandag of Springfield, Inc. v. Bandag, Inc.,* 662 S.W.2d 546 (Mo.App.1983); *Burns Jackson Miller Summit & Spitzer v. Lindner,* 88 A.D.2d 50, 452 N.Y.S.2d 80, 93 (1982) (intentional conduct that has been recognized as tortious cannot be "lawful" conduct).

On the other hand, if Defendants' conduct was lawful—in the event that Plaintiff fails to establish a cause of action for either breach of an implied contract or wrongful discharge—Plaintiff's claim must also fail since he cannot show an intent to injure a legally protected interest.

"Plaintiff carries an additional burden, albeit a heavy one to shoulder, of proving an "actual intent" on defendant's part to **injure** plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury.

---

7. The modern formulation of prima facie tort is articulated in Restatement, § 870 as:

One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not

justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability.

*Porter v. Crawford & Co, [supra]." Lundberg v. Prudential Ins. Co.,* 661 S.W.2d 667, 670 (Mo.App.1983) [emphasis added]. As the Restatement explains, "[t]he use of the term, injury, [in § 870] means that the harm must be to **a legally protected interest** of the plaintiff." *Id.,* comment e [emphasis added].

The established doctrine of employment at will does not provide Plaintiff with "a legally protected interest" in either continued employment or termination only for cause. There is a logical inconsistency between the absence of any legally protected interest of the employee in either continued employment or dismissal for good cause under the at-will doctrine and the definition of injury for the purposes of prima facie tort in the Restatement.

Furthermore, since the at-will doctrine permits termination for no reason, Defendants are not required to abjure an intent to injure him. There is, therefore, a further inconsistency between continued adherence to the long-standing legal principle permitting discharge of an employee without cause where employment is terminable at will and the demands of prima facie tort to examine the intent of the defendant employer.

This Court's finding that, in light of the existence of the employment at will doctrine and the facts of this case, Plaintiff is unable to satisfy the necessary elements of prima facie tort is consistent with the underlying purpose of prima facie tort "to provide remedy for intentionally committed acts that do not fit within the contours of accepted torts." *Schmitz,* at 396, 785 P.2d at 736. This purpose would be undermined by permitting it to shadow other more traditional causes of action, only to gain meaning in the event that those traditional causes of action prove defective. In the case at bar, relief from tortious conduct by Defendants is afforded by the now accepted tort of retaliatory discharge.

In fact, the New Mexico Supreme Court clearly stated that "prima facie tort should not be used to evade stringent requirements of other established doctrines of law" and specifically referred with approval to the law of Missouri where prima facie tort cannot be used to avoid the employment at will doctrine. *Schmitz,* at 398, 785 P.2d at 738,

citing *Lundberg, supra.* See also *Dake v. Tuell,* 687 S.W.2d 191, 193 (Mo. banc 1985); *Bandag of Springfield, Inc., supra* ("If there are categories of legally protectible interests which are now redressed, but inadequately so, the much preferable course is to revise traditional doctrine so as to protect the interest which has gone unprotected.").

The law of New York, to which the New Mexico Supreme Court also made reference, further confirms that prima facie tort and the at-will doctrine do not mix. Nor will prima facie tort be permitted to duplicate, or remedy a defect in, another established cause of action. *See D'Avino v. Trachtenburg,* 149 A.D.2d 399, 539 N.Y.S.2d 753 (2d Dept.1989) ("[T]he plaintiff may not be permitted to evade the fact that there is now no cause of action in tort for abusive or wrongful discharge of an at-will employee, or subvert the traditional at-will contract rule by casting her cause of action in terms of prima facie tort and intentional infliction of emotional distress."); *Monsanto v. Electronic Data Systems Corp.,* 141 A.D.2d 514, 529 N.Y.S.2d 512 (2d Dept.1988) ("[a] prima facie tort cause of action cannot be allowed in circumvention of the unavailability of a tort claim for wrongful discharge or the contract rule against liability for discharge of an at-will employee.").

The Court does not find Plaintiff's authorities, *McCullough v. Certain Teed Products Corp.,* 70 A.D.2d 771, 417 N.Y.S.2d 353 (4th Dept.1979) and *Avigliano v. Sumitomo Shoji America, Inc.,* 473 F.Supp. 506 (S.D.N.Y. 1979), persuasive as support for the intrusion of prima facie tort upon the at-will doctrine because, in New Mexico, resort to the residual tortious liability offered by prima facie tort in such circumstances would be superfluous. In New Mexico, *McCullough's* dismissal for refusal to participate in allegedly unlawful activity would fall under retaliatory discharge while the Defendants' counterclaim in *Avigliano* for institution of vexatious federal and state administrative and judicial proceedings and disruptive and harassing activity in the office would likely found an action for abusive process and/or intentional infliction of emotional distress.

Furthermore, the Court shares the view of those federal courts that have held that a cause of action in prima facie tort does not lie when the pleaded factual basis is within the scope of an established tort. *See Poe v. John Deere Co.*, 695 F.2d 1103, 1105 n. 3 (8th Cir.1982); *Tufts v. Madesco Invest. Corp.*, 524 F.Supp. 484, 486 (E.D.Mo.1981).

The Court in this case is concerned with not merely an overlapping but an identical factual basis for all the alleged causes of action. Indeed, in support of this cause of action, Plaintiff merely realleges the facts in support of the other causes of action, adding only a bare recital of the elements of prima facie tort relating to intent and justification. *See Complaint* ¶¶ 40, 41. The Court is satisfied that the value and validity of prima facie tort as a separate cause of action depends upon its ability to offer relief for the intentional infliction of harm where the actor's otherwise lawful conduct cannot be brought within other more traditional categories of liability. Securing that purpose requires careful monitoring that it is not merely duplicative of such categories as a "fail-safe" in the event that one or more traditional causes of action proves defective nor that it is used to evade other established principles that make liability inappropriate.

The above analysis alone is sufficient to dispose of the issue raised by this motion. Accordingly, Plaintiff's additional argument, to allow the continued inclusion of the claim until the close of evidence as pleading an alternative cause of action in accordance with the modern pleading practice, also fails. The flexibility of modern pleading should not be confused with an open-ended license to plead alternative causes of action that are untenable. Thus, the Court will not countenance the inclusion, as an alternative, of a cause of action that is fatally flawed as to its essential elements or that is contrary to other established principles of law, since a defective cause of action is in reality no alternative.

### Conclusion.

Accordingly, Defendants' motion will be granted and judgment in favor of Defendants in respect of Plaintiff's Count II claim in prima facie tort will be entered.

Wherefore,

**IT IS ORDERED, ADJUDGED AND DECREED** that Plaintiff's motion to strike Paragraph 18 of the Answer be, and hereby is denied, that Plaintiff's motion to dismiss the affirmative defense of statute of limitations be, and hereby is granted, that Plaintiff's motion to dismiss the affirmative defense of absolute privilege be, and hereby is denied, and that Defendants' motion for partial summary judgment on the pleadings as to Count II of the complaint, alleging prima facie tort, be, and hereby is granted.