**F I L E D**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ANTONIO "TONY" CORDOVA,
    Plaintiff-Appellant,

v.

PNM ELECTRIC AND GAS
SERVICES, a corporation doing
business within the State of New
Mexico,

    Defendant-Appellee.

No. 01-2326
(D.C. No. CIV-00-1328-KBM/DJS)
(D. New Mexico)

ORDER AND JUDGMENT[*]

Before **HENRY** and **McKAY**, Circuit Judges, and **BRORBY**, Senior Circuit
Judge.

Plaintiff-Appellant Cordova appeals the district court's grant of summary

judgment in favor of Defendant-Appellee PNM on his claims of race and/or

national origin discrimination and age discrimination under Title VII and the

ADEA, and his state law claims of breach of contract, prima facie tort, and

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

retaliatory discharge. Appellant, a fifty-six-year-old[1] Hispanic male, worked for PNM for twenty-five years. In July 1999, he was placed on administrative leave, allegedly while he was investigated for violating safety regulations. When he returned in August, he was discharged because of safety violations. PNM also claimed that Appellant was terminated because he had pornographic materials in his company truck and office area.[2] Appellant claims he was fired because of his age and race and in retaliation for his previous complaints to management about safety concerns.

We review the grant of summary judgment *de novo* applying the same standards used by the district court. Watts v. City of Norman, 270 F.3d 1288, 1293 (10th Cir. 2001). All facts and reasonable inferences are construed in a light most favorable to Appellant, the non-moving party. Trujillo v. University of Colorado Health Servs. Ctr., 157 F.3d 1211, 1213 (10th Cir. 1998).

Title VII and ADEA claims are analyzed under the McDonnell Douglas burden-shifting test. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the plaintiff must establish a prima facie case of discrimination. Kendrick

---

[1] At the time of his discharge.

[2] The district court did not rely on Appellant's alleged possession of pornographic materials in its grant of summary judgment. We agree that "it is not necessary to consider the pornography Plaintiff possessed in evaluating the work performance issues that justified his discharge." Memorandum Opinion and Order, Aplt. App., at 26, n.9.

v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000). If the plaintiff establishes a prima facie case, then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. Id. If the employer meets its burden, the plaintiff must proffer evidence that the employer's reason is pretextual. Id.

The district court found that Appellant established a prima facie case and that PNM provided an adequate non-discriminatory reason for the discharge. The district court then granted summary judgment to PNM based on the court's holding that Appellant failed to show pretext. Neither party appeals the district court's rulings on the first two elements. Because we find it dispositive, we will limit our inquiry to whether Appellant submitted any admissible evidence that PNM's reasons for his discharge were mere pretext for its true discriminatory reasons.

In order to prove pretext, Appellant alleges that PNM fostered a racially charged atmosphere and systematically targeted employees over fifty years of age for termination. He claims that disparaging remarks were made about Hispanics in the presence of management and that a certain employee who admitted to being prejudiced against "Mexicans" was nevertheless promoted to management. Appellant stresses that PNM does not appear to have initiated administrative leave for the purpose of investigating employees in the past. He alleges that this was

merely a pretext in order to find a reason to fire him.

We are not persuaded by Appellant's arguments. The bottom line in this case is that all of the things alleged by Appellant, even if true, do not support a claim for race, national origin, and/or age discrimination. We combed the record for any evidence that Appellant's termination was motivated by race, national origin, and/or age. Aside from the comments allegedly made by one supervisor who was not a part of the termination decision,[3] we were unable to find any support for these assertions.[4] Appellant's "evidence" is a group of conclusory assertions which fail to rebut PNM's legitimate reasons for firing him. See Aplt. App., at 322-29. There is simply no nexus between the alleged retaliation and race, national origin, and/or age.

The triggering event leading to the investigation which eventually led to Appellant's discharge was wholly objective and external. The Albuquerque Gas Control Office called out a request to the Clovis office to investigate the cause of

---

[3]We are slightly concerned with the veracity PNM's argument that the persons involved in the termination decision were not the same as the supervisors who made the alleged discriminatory comments. It seems logical that the persons making a termination decision would have at least consulted with Appellant's direct supervisors. However, the fact that the triggering event was wholly external and the thin evidence of race or age-based animus dilutes this concern.

[4]It may be true that Appellant's supervisor was abrasive and fostered a difficult working environment. It may be true that Appellant's supervisor did not like him. However, these facts alone are not enough to establish that Appellant was fired for improper reasons – especially where there is no specific evidence that Appellant's supervisor made the termination decision.

-4-

an alarm which had indicated that the gas pressure had risen to dangerous levels. The Transwestern Border Station was within Appellant's area of responsibility. Since Appellant was on vacation at the time, another gas system technician was called in to inspect the station. The technician discovered that the relief valve pressure was set to a level higher than the maximum allowable operating pressure. During his inspection, the technician also discovered other safety violations and hazards.

It is significant that the investigation was triggered by objective safety concerns that, upon further investigation, proved to be valid. PNM provided evidence that it initiated the investigation based on these objective and legitimate concerns about Appellant's safety practices. PNM also provided evidence of additional safety violations by Appellant, discovered in the investigatory process, and the potential for those violations to create liability for PNM. From the point of view of PNM management, Appellant had put the company and the public at risk with his safety violations.

From the record, it appears that it was the state of the Transwestern Border Station and the additional safety issues revealed by the investigation which led to Appellant's termination. Appellant simply did not provide any evidence to the contrary. In fact, Appellant admitted in an interrogatory that "[t]hey could have terminated me just on the Portales w/l [Transwestern Border Station] incident."

Interrogatory Answer No. 11, Aplt. App., at 270. Therefore, we agree with the well-reasoned and detailed opinion of the district court holding that Appellant did not submit any admissible evidence that PNM's reasons for firing him were mere pretext.

In addition to his discrimination claims, Appellant set forth a variety of state law claims. He first alleges that PNM breached a contract with him by firing him without cause, notice, and an opportunity to be heard. Pursuant to New Mexico law, Appellant bears the burden of showing an "express contractual provision stating [that employment is not at-will]." See Garrity v. Overland Sheepskin Co. of Taos, 917 P.2d 1382, 1385 (N.M. 1996).[5] The only evidence of an employment contract that Appellant has provided is the Human Resources Manual which provides that PNM may terminate employees for cause after giving

---

[5] The general rule in New Mexico is that an employment contract is for an indefinite period and is terminable at the will of either party unless the contract is supported by consideration beyond the performance of duties and payment of wages or there is an express contractual provision stating otherwise. Courts have allowed an exception to the at-will employment rule when there is an implied contract arising out of an employer's promise not to fire an employee except for just cause. However, we will not find an implied contract for cases in which the alleged promise by the employer is not sufficiently explicit.

Garrity, 917 P.2d at 1385 (internal citations and quotations omitted).

them notice and an opportunity to be heard. Appellant alleges that this Manual creates either an express or an implied contract for employment. However, the Manual specifically states that it "is not an employment contract, either express or implied" and that "[e]mployment with the company is at-will. That is, either the employee or the employer may end the employment relationship at any time, with or without cause, and with or without notice." Rec., Ex. C-1, at 1 (filed under seal).

We agree with the district court that Appellant did not have either an express or implied contract with PNM. As discussed above, to be considered an express contract for employment, New Mexico law requires an express contractual provision stating that employment is not at will. Therefore, the Manual is not an express contract.

Appellant's assertion that there was an implied contract also fails. New Mexico law provides:

> An implied contract is created only where an employer creates a reasonable expectation. The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon. Given the express reservation of the right to terminate an employee for any reason, [the] written personnel policy cannot be said to have created any reasonable expectation of an implied contract.

Garrity, 917 P.2d at 1385-86 (internal citations and quotations omitted). The Manual did not create a reasonable expectation of an implied contract. First, the

express reservation weighs against Appellant's assertion that he had a reasonable expectation that his employment was something other than at will. Additionally, PNM's use of positive discipline does not, in this case, create a contractual relationship with Appellant. The use of positive discipline is within the context of the rest of the Human Resources Manual which states that it is not an employment contract. The Manual also specifically states that there are exceptions to the positive discipline program and that the list in the Manual is not exhaustive. Taken in context, PNM's use of positive discipline could not have created a reasonable expectation that Appellant was subject to an implied employment contract.

Appellant also alleges retaliatory discharge in response to his complaints about safety issues to management. He alleges that he complained to both Mr. Deckard and Mr. Doles, his supervisors, about safety concerns in stations under his and their responsibility. Appellant alleges that they did not remedy these concerns and then resented him for having raised the issues.

This claim also fails. First, we are unaware of any New Mexico decisions which specifically recognize public safety complaint retaliation in situations where the complaint is made only to an employee's immediate supervisors. New Mexico does recognize retaliation for reporting "unsafe working conditions to the appropriate public agency." Garrity, 917 P.2d at 1388 (citing Gutierrez v.

Sundancer Indian Jewelry, 868 P.2d 1266, 1272 (N.M. Ct. App. 1993)); see also Weidler v. Big J Enters., Inc., 953 P.2d 1089 (N.M. Ct. App. 1997). The New Mexico Supreme Court has cautioned that while even though it "did not address the case of an employee reporting information only to his or her supervisor[, that] should not be read as foreclosing the possibility of bringing a retaliatory-discharge claim in such circumstances." Garrity, 917 P.2d at 1388. However, even if New Mexico were to recognize retaliation for an internal safety complaint as a cause of action, Appellant failed to show that those who eventually terminated him actually knew about his safety complaints to his immediate supervisors.

Appellant also alleges a claim of prima facie tort. However, as noted by the district court, New Mexico law does not recognize a claim for prima facie tort in employment-at-will situations. Aplt. App., at 31; Ewing v. State Farm Mut. Auto. Ins. Co., 6 F. Supp. 2d. 1281, 1291 (D.N.M. 1998); see also Yeitrakis v. Schering-Plough Corp., 804 F. Supp. 238, 249 (D.N.M. 1992); Hill v. Cray Research, Inc., 864 F. Supp. 1070, 1079 (D.N.M. 1991); Schmitz v. Smentowski, 785 P.2d 726, 738 (N.M. 1990). Appellant's claim can only survive if the court finds that there was a valid contractual relationship. Because there was no contractual relationship, this claim must also fail.

For the foregoing reasons, the decision of the district court is **AFFIRMED**.


Entered for the Court


Monroe G. McKay
Circuit Judge