Certiorari Denied, No. 31,941, September 30, 2009

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMCA-123

Filing Date: August 13, 2009

Docket No. 27,332

MARIA ELENA A. RAEL, On Behalf
of Herself and All Others Similarly
Situated and Derivatively On Behalf
of Westland Development Company, Inc.,

  Plaintiff-Appellant,

v.

BARBARA PAGE, SOSIMO S. PADILLA, JOE
S. CHAVEZ, JOSIE CASTILLO, CHARLES V. PENA,
GEORGIA BACA, TROY K. BENAVIDEZ, RAY
MARES, JR., RANDOLPH M. SANCHEZ, and
DOES 1-100, inclusive,

  Defendants-Appellees,

and

WESTLAND DEVELOPMENT COMPANY, INC.,

  Nominal Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
William F. Lang, District Judge

Law Offices of Nicholas Koluncich III, LLC
Nicholas Koluncich III
Albuquerque, NM

Coughlin Stoia Geller Rudman & Robbins LLP
Pamela M. Parker
San Diego, CA

1

for Appellant

Sheehan, Sheehan & Stelzner, P.A.
Luis G. Stelzner
Juan Flores
Albuquerque, NM

Greenberg Traurig, LLP
Paul R. Bessette
Jesse Z. Weiss
Kimberly G. Davis
Yusuf A. Bajwa
Austin, Tx

for Appellees

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Douglas G. Schneebeck
Brian K. Nichols
Albuquerque, NM

for Nominal Appellee

## OPINION

**BUSTAMANTE, Judge.**

**{1}**     This is an appeal from the dismissal of a purported class action challenging the 2006 acquisition of Westland Development Company, Inc. (Westland) by SunCal Companies and its wholly owned subsidiary, SCC Acquisition Corporation (collectively SunCal).  Maria Elena A. Rael, a former Westland shareholder, on behalf of herself and all others similarly situated (Plaintiff) brought suit against Barbara Page, Westland's president and CEO, along with all members of Westland's board of directors (Defendants) and Westland.  Plaintiff's complaint alleges that the acquisition of Westland by SunCal (SunCal merger) was an unfair transaction tainted by Defendants' breaches of their fiduciary duties.[1]

**{2}**     The district court granted Defendants' Rule 1-012(B)(6) NMRA motion to dismiss.  At issue is whether a shareholder of a corporation has standing to assert direct causes of action for breach of fiduciary duty in the context of an allegedly unfair or invalid merger.

---

[1]Plaintiff's claims before the district court were asserted both directly on behalf of shareholders and derivatively on behalf of Westland.  Plaintiff here appeals only the dismissal of her direct claims.

2

And if so, whether New Mexico's statutory right of appraisal provides an exclusive and adequate remedy for any resulting damages. Also at issue is whether failure to join a necessary party is adequate grounds for dismissal of this matter, and whether claims for aiding and abetting breach of fiduciary duty may be brought against persons already owing a fiduciary duty. We hold that Plaintiff's claims were improperly dismissed on the issues of standing, exclusivity and adequacy of appraisal, and failure to join SunCal. However, we hold that Plaintiff's aiding and abetting claims were properly dismissed.

**BACKGROUND**

**{3}**      For purposes of our review, we rely on the facts as alleged in the complaint to determine the sufficiency of the pleading to state a cause of action. We make no determinations as to the ultimate truth or accuracy of any of the allegations. *Healthsource, Inc. v. X-Ray Assocs. of N.M., P.C.*, 2005-NMCA-097, ¶ 16, 138 N.M. 70, 116 P.3d 861.

**{4}**      Westland was the successor-in-interest to an 82,000 acre land grant, granted by the King of Spain to the inhabitants of the community of Atrisco in 1692 (the Atrisco Land Grant). The Atrisco Land Grant lies west of Albuquerque, New Mexico, generally bounded to the east by the Rio Grande, to the west by the Rio Puerco, to the south by the Pajarito Land Grant, and to the north by St. Joseph's Drive. Westland was formed from the Atrisco Land Grant in 1967 pursuant to legislative action authorizing it to be converted to a for-profit corporation. Westland's day-to-day operations were controlled by a nine member board of directors, each of whom are named Defendants in this action. Westland had approximately 794,927 shares outstanding at the time of the merger, held primarily by heirs to the Atrisco Land Grant.

**{5}**      In 2005 Defendants began negotiating the sale of Westland with a series of potential purchasers. The first merger agreement, executed in September 2005, provided for the sale of Westland to ANM Holdings, Inc. (ANM) for $200 per share. In February 2006 two other potential suitors, SHNM Acquisition Corporation (SHNM) and Atrisco Heritage, LLC, approached Westland with more attractive offers, eventually reaching $255 per share and $300 per share, respectively. Despite Atrisco Heritage, LLC's proffered higher bid, Defendants entered into a new merger agreement with SHNM. That agreement provided for a contribution of $1 million each year for 100 years to establish and fund a cultural center to honor the heritage and historical significance of the Atrisco Land Grant. With the new merger agreement in place, Westland terminated its prior agreement with ANM, causing the company to incur a termination fee of $5 million.

**{6}**      In June 2006 before the SHNM merger could be consummated, SunCal offered to purchase Westland for $315 per share. Defendants responded by terminating the merger agreement with SHNM and entering into a new merger agreement with SunCal. This caused Westland to incur another termination penalty, this time for $15 million. The SunCal merger was approved by a vote of Westland shareholders in November 2006. Through the merger, SunCal acquired control of Westland's property comprising over 50,000 acres of the Atrisco Land Grant.

**{7}** Plaintiff initially filed suit in March 2006 seeking to rescind the then existing merger agreement with SHNM and to enjoin the sale of Westland. In September Plaintiff was permitted to amend her complaint in light of new developments, namely the termination of the SHNM merger agreement and the subsequent SunCal merger agreement. Plaintiff alleges that the sale process, beginning with the ANM merger agreement and leading to the SunCal merger, was fraught with director misconduct. Plaintiff contends that Defendants breached fiduciary duties owed to Westland and its shareholders, including the duties of good faith, loyalty, due care, and candor.

**{8}** Plaintiff's fifty-page amended complaint asserts that, similar to the prior agreements and negotiations, the SunCal merger was tainted by past and continuing director misconduct. Paraphrasing her assertions, Plaintiff alleges among other things:

1. That the merger process was orchestrated by Westland's President and CEO, Barbara Page, and Chairman of the Board, Sosimo Padilla, without any process to determine the extent or value of Westland's assets;

2. That, prior to the merger agreement, both Page and Padilla systematically diverted themselves the stock of deceased shareholders, forged ballots in order to grant themselves options to purchase stock, and granted themselves "change in control" shares which would accelerate upon sale of Westland;

3. That Defendants awarded themselves employment contracts and severance agreements which functioned as disguised bonuses and took steps to ensure that they received personal benefits from the sale while refusing to verify the true value of the land holdings being sold; and

4. That Defendants distributed false and misleading proxy statements which both omitted and failed to accurately disclose material information concerning: (1) Westland's land holdings, (2) potential oil and gas revenues, (3) an accurate history of the bids received by Westland, (4) an accurate account of the many contradictory fair value estimates submitted by Westland's contracted appraisers, (5) the shareholding position of the individual Westland directors and officers, (6) the payments potentially due individual directors and officers upon completion of the merger, and (7) the extent of Westland's water rights.

Plaintiff argues that based on the above allegations, Westland shareholders were deprived of a merger agreement negotiated by an informed board, the ability to cast an informed vote, and a fair voting process.

4

**{9}** By the time of the SunCal merger, several of Plaintiff's allegations and demands had been addressed. For example, Defendants agreed to waive claims to their allegedly ill-gotten "change-in-control" shares, to create a corporation to distribute any future oil and gas royalties to Westland shareholders, and to provide $100 million to the Atrisco Heritage Foundation for the operation of Atrisco cemeteries and preservation of cultural heritage. While recognizing these developments as positive, Plaintiff argues them insufficient given the alleged defective nature of the sales process leading up to the SunCal merger.

**{10}** Plaintiff's direct and derivative actions were dismissed on November 27, 2006, on nine grounds, but Plaintiff's appeal addresses only the dismissal of the direct causes of action.

## DISCUSSION

### Standard of Review

**{11}** A district court's decision to dismiss a complaint for failure to state a claim is reviewed de novo. A Rule 1-012(B)(6) motion to dismiss tests the legal sufficiency of the complaint, not the factual allegations of the pleadings which, for the purposes of ruling on the motion, the court must accept as true. A complaint should not be dismissed unless there is a total failure to allege some matter essential to the relief sought. For purposes of a motion to dismiss, we accept all well-pleaded facts as true and question whether the plaintiff might prevail under any state of facts provable under the claim.

*Id.* (citations omitted).

### Standing to Bring Direct Action

**{12}** Defendants argue that Plaintiff lacks standing for a direct action for breach of fiduciary duty because these claims are derivative and belong to the corporation. Generally, direct actions are those "brought by a shareholder to recover from corporate officers, directors or others . . . when he or she sustains a special injury, . . . separate and distinct from that suffered by other shareholders or a wrong involving a contractual right of a shareholder . . . which exists independently of any right of the corporation." 2 William E. Knepper & Dan A. Bailey, *Liability of Corporate Officers and Directors* § 18.01[1], at 18-2 (7th ed. 2003) (third alteration in original) (internal quotation marks and footnote omitted). In contrast, derivative actions are those "brought by one or more shareholders to enforce a right of action belonging to the corporation, which it could have asserted, but did not." *Id.* § 18.01[3], at 18-5. In derivative actions, it is "harm to the corporation that determines if a controversy exists, not damage to the shareholders." *Id.* Despite the clear theoretical distinctions between direct and derivative actions, as a practical matter, the line of distinction is often narrow. *Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 351-52 (Del. 1988).

**{13}** Defendants direct us to *Marchman v. NCNB Texas National Bank*, 120 N.M. 74, 898 P.2d 709 (1995), and *Healthsource, Inc.*, 2005-NMCA-097, for application of direct versus

derivative analysis in New Mexico. Those cases held that a shareholder lacked individual standing against third persons for damages that result because of an injury to the corporation unless a special injury exists in the form of either: (1) a special duty, such as a contractual duty, between the defendant and the shareholder; or (2) an injury separate and distinct from that suffered by other shareholders. *Healthsource, Inc.*, 2005-NMCA-097, ¶ 25; *Marchman*, 120 N.M. at 81-82, 898 P.2d at 716-17.

**{14}**    Defendants argue that *Marchman* and *Healthsource, Inc.* are controlling and that Plaintiff lacks standing because neither exception applies. Furthermore, Defendants argue that, to the extent Plaintiff alleges mismanagement or negligence, these claims may also be asserted only derivatively. *See Schwartzman v. Schwartzman Packing Co.*, 99 N.M. 436, 441, 659 P.2d 888, 893 (1983) (holding that claims against corporate officers for mismanagement belong to the corporation). The district court agreed, and dismissed Plaintiff's amended complaint for failure to state a claim, finding that Plaintiff lacked individual standing.

**{15}**    The cases cited by Defendants to argue that Plaintiff lacks standing provide little direct guidance on the issue before us. While some of Plaintiff's allegations imply simple mismanagement, claims that a merger transaction was unfair or invalid based on breached fiduciary duties are beyond the scope of anything implicated by the facts in *Schwartzman*. Furthermore, both *Marchman* and *Healthsource, Inc.* address direct causes of action brought against parties external to the corporation. In *Marchman*, shareholders in American Nut Corporation (ANC) attempted direct action against a third party bank after it attached ANC's corporate accounts in satisfaction of a debt. *Marchman*, 120 N.M. at 78-79, 898 P.2d at 713-14. Similarly, in *Healthsource, Inc.*, a shareholder in Lovelace Health Systems, Inc. (Lovelace) attempted direct action against a third-party corporation and doctor for interference with some of Lovelace's employment agreements. 2005-NMCA-097, ¶¶ 2, 6.

**{16}**    We are dealing with an attack on the validity or fairness of a merger negotiated by a corporation's own directors. Here the claims for relief are against the directors for damages allegedly suffered by shareholders directly in the form of an unfair share price paid in order to merge the corporation out of existence.

**{17}**    Of particular concern, any derivative causes of action which may have existed before the merger are lost after the merger is consummated given the requirement for continuous ownership to maintain a derivative suit. *See White ex rel. Banes Co. Derivative Action v. Banes Co.*, 116 N.M. 611, 614, 866 P.2d 339, 342 (1993) (holding that in order to maintain a derivative cause of action, a shareholder must maintain a continuous ownership interest in the corporation). If Plaintiff's claims are viewed as only derivative, any actual director misconduct relating to the transaction would otherwise escape review by the fortuity of the intervening merger.

**{18}**    Delaware courts which, like New Mexico, apply a continuous ownership rule for derivative actions, have considered this issue and provide guidance. In *Parnes v. Bally Entertainment Corp.*, 722 A.2d 1243 (Del. 1999), a plaintiff stockholder alleged that the defendant's directors breached their fiduciary duties by entering into a merger agreement

through unfair dealing which resulted in an unfair price. *Id.* The complaint was dismissed because the defendant had been merged out of existence, and since the claims were viewed as derivative, there was no longer standing to maintain the action. *Id.* On review, the court held that standing to bring direct claims existed because an unfair merger transaction results in direct injuries to the stockholders, independent of any injury to the corporation. *Id.* at 1245. Specifically, the court held that "[a] stockholder who directly attacks the *fairness or validity* of a merger alleges an injury to the stockholders, not the corporation, and may pursue such a claim even after the merger [is] consummated." *Id.* (emphasis added). The court characterized claims attacking the fairness or validity of a merger as those questioning "the fairness of the price offered . . . or the manner in which the . . . agreement was negotiated." *Id.* In order to assert such a claim, "a stockholder must challenge the validity of the merger itself, usually by charging the directors with breaches of fiduciary duty resulting in unfair dealing and/or unfair price." *Id.*

**{19}** Since its decision in *Parnes*, the Delaware Supreme Court has gone further to help clarify direct versus derivative analysis. In *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004), the court replaced the concept of "special injury" with a two-part analysis based on the following questions: (1) "[w]ho suffered the alleged harm—the corporation or the suing stockholder[s] individually—and [(2)] who would receive the benefit of [any] recovery or . . . remedy?" That is, "a court should look to the nature of the wrong and to whom the relief should go." *Id.* at 1039. The court identified *Parnes* as a proper application of the two-part analysis. *Tooley*, 845 A.2d at 1039.

**{20}** Here, Plaintiff's complaint challenges the SunCal merger at length based on the fairness of the price and the manner in which the agreement was negotiated. The complaint alleges that Defendants breached fiduciary duties by engaging in self-interested negotiations with potential buyers, devaluing the company for personal gain, and conducting unfair and misleading voting processes. Applying *Parnes*, we conclude that Plaintiff's pleadings sufficiently challenge the fairness and validity of the SunCal merger by directly alleging breaches of fiduciary duties that resulted in unfair dealing or an unfair price.

**{21}** With respect to the question of who suffered the harm, pursuant to *Parnes*, we conclude that a stockholder who directly attacks the fairness or validity of a merger alleges a direct injury to the stockholders, not the corporation. *See Parnes*, 722 A.2d at 1245. In addition, given that Westland has been merged out of existence, any remedy can benefit only Westland's ex-shareholders directly. *See Tooley*, 845 A.2d at 1035. Based on the foregoing, Plaintiff has adequately pled a direct injury. We reverse the district court and hold that Plaintiff has standing to pursue her direct claims.

**Exclusivity and Adequacy of the Right of Appraisal**

**{22}** Defendants argue that, even if Plaintiff has direct standing, dismissal was proper because New Mexico's appraisal statute provides the exclusive remedy in this case, and an adequate remedy at law. The relevant section is as follows:

7

> A shareholder of a corporation who has a right under this section to obtain payment for his shares shall have no right at law or in equity to attack the validity of the corporate action that gives rise to his right to obtain payment, nor to have the action set aside or rescinded, except when the corporate action is unlawful or fraudulent with regard to the complaining shareholder or to the corporation.

NMSA 1978, § 53-15-3(D) (1983). Plaintiff argues that the appraisal statute does not apply and, even if it did, her claims fall within the exception for "fraudulent or unlawful" corporate action. We agree. For purposes of evaluation in the context of a Rule 12(B)(6) motion, the alleged breaches of fiduciary duty detailed in the amended complaint rise to the level of fraudulence or illegality. By the statute's own terms, the appraisal remedy cannot be deemed exclusive at this point. Plaintiff should at least be afforded the opportunity to prove her allegations.

{23} For the same reason, it would be difficult at this stage of litigation to determine that the appraisal remedy would be adequate. *See Andra v. Blount*, 772 A.2d 183, 192 (Del. Ch. 2000) (stating that it would be "nearly impossible . . . to dismiss a well-pled unfair dealing claim on the basis that appraisal [would be a] fully adequate" remedy). To the extent that Plaintiff has been injured, as alleged, we cannot conclude that mere valuation would, as a matter of law, provide adequate redress.

**Failure to Join as Proper Grounds for Dismissal**

{24} The district court found that SunCal was an indispensable party in this case and cited Plaintiff's failure to join SunCal as one reason for dismissal. Generally, the question of indispensability is a factual question reviewed for abuse of discretion. *Golden Oil Co. v. Chace Oil Co.*, 2000-NMCA-005, ¶ 8, 128 N.M. 526, 994 P.2d 772 (filed 1999). In this case, we do not review the district court's determination of indispensability, but instead whether dismissal was proper based on failure to join. *See Ruegsegger v. Bd. of Regents of W. N.M. Univ.*, 2007-NMCA-030, ¶ 11, 141 N.M. 306, 154 P.3d 681 (reviewing a Rule 1-012(B)(6) motion to dismiss de novo).

{25} Having determined that reversal is required on the issues of standing and appraisal, we cannot conclude that failure to join SunCal, standing alone, is a sufficient ground for dismissal. Where it is determined that a party is required for just adjudication, an opportunity to join that party should first be afforded. Rule 1-019(A)(2)(b) NMRA states that if a necessary party has not been joined, "the court shall order that he be made a party." In addition, Rule 1-021 NMRA, addressing misjoinder and nonjoinder of parties, states that "[m]isjoinder . . . is not ground[s] for dismissal of an action." We interpret these rules as requiring, to the extent feasible, that Plaintiff be allowed opportunity to join SunCal before having her claims dismissed for failure to join.

8

**{26}** We make no determination on Defendants' position that since the merger has been consummated, the district court's ruling on nonjoinder of SunCal is no longer at issue. Even though the merger was consummated, we leave to the district court the question of indispensability of SunCal in further proceedings.

**Aiding and Abetting**

**{27}** In addition to alleging that Defendants breached fiduciary duties, Plaintiff also alleges that Defendants aided and abetted one another in committing the breaches. The district court dismissed Plaintiff's claim for aiding and abetting stating that such claims may be brought only "against a person who does not have a fiduciary duty" and that here, "all the individual defendants had such a duty." We agree with the district court on this issue and hold that aiding and abetting in this context is not proper as it is duplicative of the underlying claims.

**{28}** New Mexico recognizes tort liability for aiding and abetting a breach of a fiduciary duty where an injured party has a fiduciary relationship with the principal tortfeasor, and a third party occupies the role of an accomplice in relation to the principal tortfeasor. *GCM, Inc. v. Ky. Cent. Life Ins. Co.*, 1997-NMSC-052, ¶¶ 17-18, 124 N.M. 186, 947 P.2d 143. In *GCM, Inc.*, the aiding and abetting claim was against a third party who allegedly aided a fiduciary in a breach but owed no direct fiduciary duties. *Id.* ¶ 23. In that context, "tort liability for aiding and abetting is consistent with one of the principal goals of tort law, the deterrence of wrongful actions that result in harm." *Id.* ¶ 18. Extending aiding and abetting liability to a party already owing a fiduciary duty is inconsistent and duplicative of this principle because a fiduciary is already liable for the breach.

**{29}** Plaintiff cites *Henderson (In re Western World Funding, Inc.) v. Buchanan*, 52 B.R. 743, 764 (Bankr. D. Nev. 1985), *rev'd in part on other grounds*, 131 B.R. 859 (D. Nev. 1990), to support its position that Defendants may be held liable both principally and as aiders and abettors. In *Henderson*, the court considered the liability of two fiduciaries for aiding in each other's misappropriations, concluding that "[o]ne who knowingly aids or participates in a fiduciary's violation of his trust is also liable for the breach." *Id.* We disagree with Plaintiff's interpretation that this language supports liability of a fiduciary for aiding and abetting. When read in context, it actually implies that where one fiduciary aids another in a breach, both may be held principally liable. *See id.*

**{30}** To the extent that Defendants assisted or encouraged one another in breaching fiduciary duties, they may be found principally liable for the breach. But extending aiding and abetting liability in such situations is not supported by law. Therefore, we affirm the district court's finding that aiding and abetting claims may not be alleged against Defendants in this case.

**CONCLUSION**

9

**{31}** For the foregoing reasons, we reverse the district court's dismissal on the issues of standing, exclusivity and adequacy of appraisal, and failure to join SunCal, and we remand for further proceedings consistent with this opinion.

**{32}    IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**JONATHAN B. SUTIN, Judge**

**Topic Index for _Rael v. Page_,  No. 27,332**

| AE | APPEAL AND ERROR |
|---|---|
| AE-SR | Standard of Review |

| CP | CIVIL PROCEDURE |
|---|---|
| CP-CA | Class Actions |
| CP-DS | Dismissal |
| CP-ID | Indispensable Parties |
| CP-MD | Motion to Dismiss |
| CP-SD | Standing |

| CM | COMMERCIAL LAW |
|---|---|
| CM-FD | Fiduciary Duty |

| CS | CORPORATIONS |
|---|---|
| CS-OD | Officers and Directors |
| CS-RM | Reorganization and Merger |
| CS-SL | Shareholder Rights and Liabilities |

| MS | MISCELLANEOUS STATUTES |
|---|---|
| MS-RA | Real Estate Appraisal Act |

| PR | PROPERTY |
|---|---|
| PR-AP | Appraisal |

**RE**             **REMEDIES**
RE-EC              Exclusive Remedy

**TR**             **TORTS**
TR-FR              Fraud